BLACKLOCK, EXECUTOR OF RINALDO P. SMITH. *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 65. Argued December 10, 1907.—Decided January 13, 1908.

A mere recital in an act, whether of fact or of law, is not conclusive unless it be clear that the legislature intended that it be accepted as a fact in the case. *Kinkead* v. *United States*, 150 U. S. 433.

The Court of Claims was not precluded by the recitals in the act of May, 1902, 32 Stat. 207, 243, referring this case to it, from examining into the facts and determining whether the claimant's lien referred to in the act as a prior lien was or was not a prior lien and basing its decision upon the actual facts found.

Section 106 of the act of July 20, 1868, 15 Stat. 125, 167, providing for an action in equity by the collector of internal revenue to enforce a lien of the United States for unpaid revenue taxes, did not supersede the provisions of the act of July 13, 1866, 14 Stat. 107, giving the remedy of distraint so that such lien could only be enforced by suit in equity, but it gave another and cumulative remedy in cases where, as expressed in the act, the collector deemed it expedient. *Mansfield* v. *Excelsior Refining Co.*, 135 U. S. 326.

In this case, *held*, that the lien of the Government for unpaid revenue taxes on land of the delinquent was prior to that of the mortgagee bringing this action, and that the sale of the land by distraint proceedings, and not by foreclosure suit in equity, was in conformity with the act of July 13, 1866, then in force, and vested the title in the purchasers at the sale and their grantees, subject to the right of redemption given by the statute to the owners of the land and of holders of liens thereon.

41 C. Cl. 89, affirmed.

THIS appeal brings up for review a judgment of the Court

of Claims dismissing a petition filed in that court against the United States.

So far as it is necessary to state the facts, the case is substantially as follows:

Smith, Ellett & Co., a firm composed of Rinaldo P. Smith and Francis M. Ellett, were engaged in business as leather and commission merchants in Baltimore from some time in 1867 or 1868 to January 1, 1870.

On the twenty-sixth of October, 1869, George J. Stephens, a distiller and tanner in Virginia, was indebted to Smith, Ellett & Co., in the sum of $7,000, already due, and in the further sum of $2,000 to become due in the course of future dealings. On the same day a certain deed was executed between Stephens of the first part, Beazley, trustee, of the second part, and Smith and Ellett, doing business as Smith, Ellett & Co., of the third part. It recited that Stephens was indebted to Smith, Ellett & Co. in the sum of $4,000, evidenced by the bond or demand note of Stephens dated October 26, 1869, and that Smith, Ellett & Co. had accepted, for the accommodation of Stephens, a draft for $3,000, and had agreed to accept a further accommodation draft for $2,000. In order that said acceptances in addition to the note for $4,000 might be secured, Stephens, by deed dated October 26, 1869, conveyed to Beazley a tract of land containing about 400 acres, more or less, in Greene County, Virginia, upon which Stephens then resided, with the mansion house and all buildings thereon, including a tannery and distillery, and all things appurtenant thereto "in trust to secure the said bond of four thousand dollars and all the acceptances already made and given as aforesaid, now current and to become payable, and all acceptances to be hereafter made and given as aforesaid, and all of which may be made and given for renewal of former ones, or to replace the money paid by the party of the first part in taking up former ones as aforesaid, or in any other manner as stated in the premises, so as the same shall not exceed the sum of five thousand dollars."

The property conveyed was worth more than $3,000. The

deed was duly acknowledged and recorded on the thirtieth day of October, 1869.

When that deed of trust was executed and recorded there was due from Stephens to the United States Government internal revenue taxes, which had accrued from July, 1867, to October 26, 1869, amounting to $4,000.

On the twenty-fifth of January, 1870, Smith and Ellett executed the following instrument of writing: "Baltimore, January 25, '70. We hereby give our consent to the use of the distillery premises of Geo. J. Stephens, situated on the Harrisonburg turnpike, about four miles from Stannardsville, and which premises contain about three acres of land, more or less, immediately surrounding the distillery building, and which building is contained thereon or comprised therein by said Geo. J. Stephens, subject to the provisions of the internal rev. law, and that the lien of the United States for taxes and penalties hereafter incurred shall have priority to the extent of the above-mentioned premises of a certain deed of trust executed by said Geo. J. Stephens for our benefit, and whereof Wyatt S. Beazley is trustee, and that in case of the forfeiture of the said distillery premises, or any part thereof, the title of the same shall vest in the United States, discharged from said deed of trust."

In order to satisfy the above taxes, and the penalties authorized by law, the Collector of Internal Revenue for Virginia, by his deputy, Lawson, during December, 1870, distrained the distillery building and about three acres (of the 400-acre tract) upon which the distillery stood, and advertised the property for sale. Prior to any sale the distillery buildings and contents, including a quantity of whiskey, were destroyed by fire. The collector thereupon, before the day of sale, extended his distraint so as to include the balance of Stephens' land, amounting in all to about 525 acres, which included the land embraced by the trust deed to Smith, Ellett & Co., and advertised all of said land for sale. Pursuant to the advertisement, the deputy collector, on January 12, 1871, offered the whole of Stephens' land for sale at public auction. Smith, being present

as a member of Smith, Ellett & Co., gave formal notice of the
above deed of trust, asserting a prior lien under it to that of
the Government and protesting against the sale of the land
except subject to that lien. The deputy collector proceeded
with the sale and the property was bid in for the Government
for $4,239.50, that being the amount of delinquent taxes,
penalties for non-payment thereof, and costs of distraint and
sale. One year thereafter, January 12, 1872, that officer
executed a deed to the United States, which was duly acknowl-
edged and recorded on November 25, 1873.

Under the authority conferred upon the Commissioner of In-
ternal Revenue by § 3208 of the Revised Statutes, as amended
by the act of March 1, 1879, and with the approval of the
Secretary of the Treasury, the lands so purchased were sold, at
public auction, by order of the Commissioner on the twelfth day
of June, 1888, and Miss Stephens became the purchaser at the
price of $500. She died after the sale, and on October 6, 1888,
the United States, by the Commissioner of Internal Revenue,
executed a quitclaim deed to the devisees of the purchaser,
conveying to them "all right, title and interest of the Uni-
ted States at the time of said last named sale in the premises
aforesaid, and free from any claim on the part of the United
States."

By an act of Congress of May 27, 1902, 32 Stat. 207, 243,
c. 887, it was provided: "That jurisdiction is hereby conferred
on the Court of Claims to hear and determine the claim of
Rinaldo P. Smith, of Baltimore, Maryland, against the Govern-
ment of the United States on the account of the sale, purchase,
or occupation by the Government, through its internal revenue
officers or others, of certain real estate of one George J. Stephens
in Greene County, Virginia, upon which the late firm of Smith,
Ellett & Company, now represented by Rinaldo P. Smith, had
a prior lien; and the right of the Government to plead the
statute of limitations in bar of said claim is hereby waived:
Provided, That said claimant file his petition within sixty days
from the passage of this act in said Court of Claims, either at

law or in equity as he may deem the rights of his case shall require; and the Government shall, upon notice served according to the rules and practice of said court, appear and defend against said suit, and the same shall proceed to final hearing and judgment, with the right of appeal to the Supreme Court of the United States by either party, as provided by law."

The present action was brought in 1904 by the executor of Smith under the authority of that act.

The petition sets forth certain facts connected with the claim, and, among other things, it alleged the following: "9. The petitioner is advised and believes, and so charges, that the proceeding and sale above recited, whereby the United States acquired the title to said land and defeated the lien of said firm was in open violation of § 3207 of the Revised Statutes, which was then in full force and should have governed the proceeding of the United States in the premises; and that the officers of the United States having abundant notice of the prior lien of the said Smith, Ellett & Company, should have commenced a proceeding in the United States District Court for said district in conformity with the provisions of the statute above cited, to which proceeding the said Smith, Ellett & Company should have been made parties, and whereby their prior lien should have been audited, adjusted and paid out of the proceeds of such sale in preference to the claim of the United States, as provided by such statute; and that, by adopting the summary proceeding which was resorted to in the sale of said land, being the same authorized by §§ 3197 and 3198, Rev. Stat., in cases where no prior liens exist, the United States practically proclaimed to the whole world, just as its agent who made the sale actually did, that there was no valid prior lien on said land and that a clear title was passed by the sale. 10. That the United States accepted the conveyance so made and held the property by virtue thereof for many years, collecting the rents and profits, and that the first notice this petitioner had of its relinquishment of its holdings was through an official letter from Acting Commissioner of Internal Revenue Wilson,

bearing date January 7, 1895, in which it was stated that by a conveyance made in October, 1888, the United States had divested itself of its title to said land. 11. That, after the sale and conveyance aforesaid, the said Smith did, as the representative of his said firm, make every effort to collect the said debt from the said George J. Stephens in said Greene County, and to that end, at considerable expense, retained counsel learned in the law; but he was advised that the United States, by its summary proceeding, had taken over the title to the mortgaged land and defeated his lien thereon, and the said Stephens, having no other property against which he could proceed, his only recourse lay, first, in redeeming the property within one year under the provision of § 3202, Rev. Stat., by paying to the deputy collector the full amount of $4,229.50 claimed to be due from said Stephens to the United States, or, second, in a demand of indemnity from the United States; but the said firm, being wholly unable pecuniarily to advance that large sum of money and having serious doubts whether the mortgaged property was at that time fairly worth that amount in addition to their mortgage lien, and they were, therefore, unable to redeem said property, and neither the said firms nor this petitioner has ever directly or indirectly received any portion of said debt so due from the said Stephens as aforesaid, but the same is still due and unpaid in the full amount above stated. 12. That at the time of said sale and conveyance to the United States, the land of said Stephens, to which the said lien of the said Smith, Ellett & Company attached, was amply worth the amount of their said lien and would have brought that amount and more at any fair and regular sale thereof at auction or otherwise. 13. That on the first day of January, A. D. 1875, the partnership existing between the said Rinaldo P. Smith and the said Francis M. Ellett and a certain William F. Larrabee, who had in the meantime become a partner, expired by limitation in the articles of copartnership and was dissolved by mutual consent, and thereupon all the partnership assets of the old firm, including the debt due from Stephens, as aforesaid,

passed to this petitioner by authority of the firm as settling partner, with the exclusive right to collect the same and sign valid acquittance therefor; and although this petitioner has repeatedly made demand upon the proper officers of the Treasury Department for payment of his said claim, the same has never been paid, or any part thereof, but, on the contrary, allowance and payment thereof has been refused."

The relief sought was a judgment against the United States for $8,666.44 with interest thereon from January 12, 1871.

The Government answered, denying all the allegations of the petition and asking for judgment dismissing the suit.

*Mr. Francis M. Cox* and *Mr. John M. Thurston,* with whom *Mr. Charles C. Lancaster* was on the brief, for appellant:

The Federal Government, since the passage of the act of July 20, 1868, c. 186, § 106, cannot enforce a lien for internal revenue taxes against real estate (however clear may be its priority) in derogation of a duly recorded mortgage lien, through the summary process of distraint; and sale by such summary process can only convey the then existing interest of the delinquent taxpayer in the real estate so sold. *Mansfield* v. *Excelsior Refining Co.,* 135 U. S. 326; *Supervisors* v. *United States,* 4 Wall. 435; *Galena* v. *Amy,* 5 Wall. 705.

The Court of Claims was in error in holding that this case is governed by the case of *Alkan* v. *Bean,* 8 Bissell, 89. That case is clearly distinguishable.

The Government never acquired any lien at all on the land in controversy, but only on the distillery premises; and, even if it had acquired such lien, it lost its priority to that of appellant through its long-continued negligence in not collecting its taxes monthly in conformity to its own mandatory laws, and in not enforcing its rights under the warehousing and official bonds of the distiller.

A reference to the jurisdictional act apparently shows that Congress had considered the several points set forth in this branch of the argument, and had itself determined the priority

of appellant's lien, for it is therein distinctly stated that Smith, Ellett & Co., "had a prior lien" on the land in controversy. It appears, therefore, that the question of the priority of appellant's lien was not submitted to the Court of Claims, since it was clearly within the power of Congress to determine that question for itself.

The Lawson deed would not have been a valid conveyance of the property before the passage of the act of July 20, 1868, directing a proceeding in equity, because of its failure to set forth in its recitals the essential fact of a demand of the tax prior to October 26, 1869, when appellant's lien attached; and this fatal omission cannot be cured by any presumption that the officer discharged his duty.

*Mr. Charles F. Kincheloe*, Special Attorney, with whom *Mr. Assistant Attorney General Van Orsdel* was on the brief, for appellee.

Mr. Justice Harlan, after making the foregoing statement, delivered the opinion of the court.

We have seen that before the execution of the deed of trust, under which the plaintiff claims, taxes to the amount of $4,000 had accrued to the United States against the distiller Stephens, which he neglected, upon demand, to pay. What were the rights of the United States after such demand and failure to pay? This question depends upon the scope and effect of certain statutory provisions, as follows:

1. That part of §§ 28 and 30 of the act of June 30, 1864, 13 Stat. 232–234, as amended by the ninth section of the internal revenue act of July 13, 1866, 14 Stat. 98, 107, 108, c. 184, which declares that "if any person, bank, association, company, or corporation liable to pay any tax shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due until paid, with interest, penalties, and costs that may accrue in addition

thereto, upon all property and rights to property belonging to such person, bank, association, company, or corporation; and the collector, after demand, may levy, or by warrant may authorize a deputy collector to levy, upon all property and rights to property belonging to such person, bank, association, company, or corporation, or on which the said lien exists, for the payment of the sum due as aforesaid, with interest and penalty for non-payment, and also of such further sum as shall be sufficient for the fees, costs and expenses of such levy . . . . (p. 108). That in any case where goods, chattels, or effects sufficient to satisfy the taxes imposed by law upon any person liable to pay the same shall not be found by the collector or deputy collector whose duty it may be to collect the same, he is hereby authorized to collect the same by seizure and sale of real estate," etc.

2. That part of § 32, p. 157, of the same act, which provides: "That there shall be levied, collected, and paid on all distilled spirits upon which no tax has been paid according to law, a tax of two dollars on each and every proof gallon [reduced to 50 cents by act of July 20th, 1868, ch. 186], to be paid by the distiller, owner, or any person having possession thereof; and the tax shall be a lien on the spirits distilled, on the distillery used for distilling the same, with the stills, vessels, fixtures, and tools therein, and on the interest of said distiller in the lot or tract of land whereon the said distillery is situated, from the time said spirts are distilled, until the said tax shall be paid."

3. That part of § 106 of the act of July 20, 1868, c. 186, 15 Stat. 125, 167, which provides that "In any case where there has been a refusal or neglect to pay any tax imposed by the internal revenue laws, and where it is lawful and has become necessary to seize and sell real estate to satisfy the tax, the Commissioner of Internal Revenue may, if he deems it expedient, direct that a bill in chancery be filed in a District or Circuit Court of the United States, to enforce the lien of the United States for tax upon any real estate, or to subject any

real estate owned by the delinquent, or in which he has any right, title, or interest, to the payment of such tax. And all persons having liens upon the real estate sought to be subjected to the payment of any tax as aforesaid, or claiming any ownership or interest therein, shall be made parties to such proceedings, and shall be brought into court as provided in other suits in chancery in said courts. And the said courts shall have, and are hereby given, jurisdiction in all such cases, and shall at the term next after such time as the parties shall be duly notified of the proceedings, unless otherwise ordered by the court, proceed to adjudicate all matters involved therein, and to pass upon and finally determine the merits of all claims to and liens upon the real estate in question, and shall, in all cases where a claim or interest of the United States therein shall be established, decree a sale, by the proper officer of the court, of such real estate, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." This section is substantially preserved in § 3207 of the Revised Statutes, except that the latter omits the words "if he deems it expedient," found in the above section of the act of 1868.

Before considering these statutory provisions it is proper to refer to one point. The plaintiff insists that in view of the words of the act under which this suit was brought, it must be taken that the lien created by the trust deed of October 26, 1869 was prior to any then existing in behalf of the Government. This contention rests entirely on the statement in that act that the late firm of Smith, Ellett & Co., represented by Smith, "had a prior lien." But, plainly, from the context and the admitted facts, that was merely by way of recital and as showing what that firm or Smith claimed. It could not have been intended as an admission by Congress that no lien existed in favor of the United States at the time that deed of trust was executed. The findings expressly state that when the deed was executed taxes had accrued against the distiller in favor of the United States from July, 1867, to August, 1869, amount-

ing to $4,000, and that a demand was made for their payment
prior to the execution of the deed of trust under which the
plaintiff claims.    By the statute of 1866 it is provided that if
any delinquent, liable to taxes, shall neglect or refuse to pay
them after demand, there shall be a lien in favor of the Uni-
ted States from the time it was due "upon all property and
rights to property" belonging to the delinquent.  In *Kinkead* v.
*United States,* 150 U. S. 483, 497, the court said it was well
settled "that a mere recital in an act, whether of fact or of
law, is not conclusive unless it be clear that the legislature in-
tended that the recital should be accepted as a fact in the case."
No such intention is to be imputed in this case to Congress.
On the contrary, it is manifest that Congress intended that
the claim of the parties was to be judicially investigated and
determined according to all the facts as disclosed by the evi-
dence adduced.    We are clear that whatever the legal effect of
the fact, it must be taken that the lien of the United States
for its unpaid taxes attached before the trust deed was executed
and recorded.    That the Government acquired a lien on the
property in question after the failure of the distiller to pay,
upon demand, the taxes due to the United States, is too mani-
fest, under the words of the statute, to admit of doubt.    And
this lien, we have seen, attached before the execution of the
deed of trust of October 26, 1869.

It is to be observed that the statute gave to the Government,
in order to secure its taxes, not only a sweeping lien "upon all
property or rights to property" belonging to the delinquent,
but a specific or special lien on spirits for the gallon taxes.
It was, therefore, said by Solicitor General Phillips, 16 Opp. A. G.
634, 636: "It may be true that because of the *greater definite-
ness* of the special provision for a lien for the tax upon spirits
there is rarely occasion for calling in the provision for a lien
for taxes in general, but there is nothing to forbid that general
policy to apply in all cases where there is nothing in the special
policy to contradict."

The plaintiff contends that the act of 1868 superseded the

provisions of the previous law giving the remedy of distraint and that after the passage of that act the United States could only proceed in case of conflicting liens, by a regular suit in equity in a Federal court. On the part of the Government it is contended that the remedy given by that act is not exclusive, but can be used by the United States whenever it sees proper to pursue that remedy rather than the remedy of distraint.

We are of opinion that the Government correctly interprets the act of 1868. If Congress had intended to prescribe a formal suit in equity as the only mode by which the Government could sell real estate upon which it had a lien for internal revenue taxes, and upon which private parties also had liens by mortgage or deed of trust, it would have done so in clear words, particularly as Congress knew at the time of the then existing remedy by distraint. The words used do not show that Congress intended a suit in equity as exclusive of all other methods in such cases. It seems to have taken care not to so prescribe. The two remedies could well coexist. The act of 1868 declared that the Commissioner of Internal Revenue *may*, "if he deems it expedient," proceed by bill in chancery, without using any words implying a purpose to withdraw from the Government the right then existing to resort to distraint and sale. Congress, we assume, doubtless thought that cases might arise in which it would be desirable that all questions of title to property to be sold for taxes should be cleared up before a sale took place. Hence the provision which authorized, but did not require, a suit in equity, and which left untouched the right of the Government to proceed by distraint. We must not be understood as saying that if the words "if he deems it expedient" had not been in the statute, that the result would have been different. But those words are significant as tending to remove all doubt as to the correct interpretation of the statute and make it evident that Congress did not intend to take away the remedy by distraint and make the remedy by suit exclusive, but only to give another and cumulative remedy for the enforcement of liens and taxes.

This was the view taken of the statute by the Circuit Court of the United States for the Eastern District of Wisconsin in *Alkan* v. *Bean,* 8 Biss. 83, 89. Judge Dyer, delivering the judgment of the court in that case, held that the remedy given by the act of 1868, Rev. Stat. § 3207, and that given by distraint were concurrent, neither remedy being exclusive.

It is said that these views are inconsistent with the judgment of this court in *Mansfield* v. *Excelsior Refining Co.,* 135 U. S. 326. We do not think so. In that case the principal question was, what title passed by a collector's sale for delinquent taxes due from a distiller who held at the time of sale only a leasehold interest in the property seized? It was held that the collector could only sell by distraint the interest of the distiller, and that his deed to the purchaser should be regarded as conveying only such interest as the collector was entitled to sell—the court, in that case, recognizing the right of the Government to enforce by distraint whatever lien it had for unpaid taxes, subject to the rights of other lienholders. It said (p. 339): "But in what mode may the Government enforce its prior lien? In order to collect the taxes due from Hinds, the distiller, it might have instituted a suit in equity, to which not only the distiller, who had simply a leasehold interest, but all persons having liens upon, or claiming any interest in, the premises could be made parties; in which suit, it would have been the duty of the court to determine finally the merits of all claims to and liens upon the property, and to order a sale distributing the proceeds among the parties according to their respective interests. Of course, the United States having, by stipulation, priority of lien, would have been first paid out of the proceeds. But no such course was pursued. The officers of the Government preferred to adopt the summary method of sale by the collector upon notice and publication, as provided for in § 3197. It may be conceded that if the distiller had been the owner of the fee, a sale in that mode would have passed *his* interest subject to the rights of any prior incumbrancer, and subject to the right of any subsequent

incumbrancer to redeem the premises. But the delinquent distiller had no interest except a leasehold interest, and that expired, as we have seen, on May 1, 1877. We are of opinion that the collector's sale in the summary mode prescribed in § 3197 passed, and under the statute could have passed, nothing more than the interest of the delinquent distiller. When the collector distrains and sells personal property for taxes, his certificate, by the express words of the statute (§ 3194), transfers to the purchaser the right, title and interest of the *delinquent* in the property sold. When he sells real estate for taxes, the statute, in terms equally explicit (§ 3199), declares that his certificate of purchase shall be considered and operate as a conveyance of the right, title and interest the *party delinquent* had in the real estate so sold. Now, if Congress intended to invest the collector with authority to sell, by the summary process of notice and publication, the interest of any other person than the delinquent distiller, the statute would have described a certificate that would pass the interest of such person in the property sold. The provision that the certificate of purchase shall pass the interest of the delinquent in the property sold by the collector excludes, by necessary implication, the interest of any other person. This is made clear by the fact that the statute, in the case of a sale by the collector, requires notice to 'the person whose estate it is proposed to sell' (§ 3197), which person is, of course, the one who is delinquent in the matter of taxes. Any other construction would impute to Congress the purpose, in order that the taxes against the delinquent distiller, having only a leasehold interest, might be collected, to seize and sell the interest of the owner of the fee, and to destroy the lien of an incumbrancer, without giving either an opportunity to be heard."

While the *Mansfield case* recognized the right of the Government to proceed by a regular suit in equity, it also distinctly recognized its right to proceed, by distraint, and to sell the interest of the delinquent taxpayer, whatever such interest was, saving, of course, the rights of incumbrancers. In the

present case the distiller was the owner of the fee when the lien of the Government for taxes accrued—a fact which distinguishes this from the *Mansfield case.* When that lien accrued there was on the property no incumbrance whatever. The incumbrance arising from the deed of trust of 1869 arose after the lien of the Government attached. Therefore the Government had the right, by distraint, to sell such interest in the lands as the delinquent distiller owned at the time its lien attached—which was the fee—just as the collector had the right, in the *Mansfield case,* to sell the leasehold interest of the distiller. As the leasehold interest of the distiller passed by the sale in the *Mansfield case,* so the interest which the distiller in this case had when the Government's lien attached passed by the sale of the collector, subject, of course, to the right of the holder of the subsequent incumbrance created by the deed of trust of 1869, to redeem the property from the sale. By the statute, under which the sale took place, it was provided: "Any person, whose estate may be proceeded against as aforesaid, shall have the right to pay the amount due, together with the costs and charges thereon, to the collector or the deputy collector at any time prior to the sale thereof, and all further proceedings shall cease from the time of such payment. The owners of any real estate sold as aforesaid, their heirs, executors, or administrators, or *any person having any interest therein, or a lien thereon,* or any person in their behalf, shall be permitted to redeem the land sold as aforesaid, or any particular tract thereof, at any time within one year after the sale thereof, upon payment to the purchaser, or, in case he cannot be found in the county in which the land to be redeemed is situate, then to the collector of the district in which the land is situate, for the use of the purchaser, his heirs or assigns, the amount paid by the said purchaser and interest thereon at the rate of twenty per centum per annum." So that neither the distiller nor the holder of the lien created by the deed of trust of 1869 was without remedy. The lienholder, under the deed of trust of 1869, could have prevented the sale.

by paying the amount of taxes due the United States, with costs and charges; or, after sale, could have redeemed the land in the mode prescribed by the statute. But neither of those courses was pursued, because, as the petition states, the firm represented by Smith was pecuniarily unable to pay the amount necessary for the redemption of the land from the sale. But that was the misfortune of the parties concerned. The fact could not affect the right of the United States to have the interest of the distiller, whatever that was at the time its lien attached, sold for the taxes.

These views dispose of the case; for, it cannot be that any liability rests upon the United States to pay the debt secured by the deed of trust of 1869, if it be true, and we hold it to be true, that whatever the Government did in the collection of the taxes due to it, was in pursuance of its rights under the law. We are unable to perceive that either the distiller Stephens or any one asserting rights under the above deed of trust had or has any ground of action against the Government.

Passing, as unnecessary to decide, many of the questions discussed by counsel, we affirm the judgment.

*Affirmed.*