## Richmond

United States of America v. T. Eugene Smith and Burch Millsap, Trustees for Jefferson Manor Venture, A Partnership.

June 10, 1968.

Record No. 6664.

Present, All the Justices.

*Stephen H. Paley* (D.C.) (*Claude V. Spratley, Jr., United States Attorney; Stefan C. Long, Assistant United States Attorney,* on brief), for plaintiff in error.

*Carrington Williams* (*Bauknight, Prichard, McCandlish & Williams,* on brief), for defendants in error.

EGGLESTON, C.J., delivered the opinion of the court.

T. Eugene Smith and Burch Millsap, trustees for Jefferson Manor Venture, filed in the court below a petition against the United States of America and James D. Swinson, Sheriff of Fairfax County, seeking to enforce the collection of a $3,000 claim for rent due Jefferson Manor, the landlord, out of the proceeds of $3,466 derived from the sale of certain property of Dixie Dime Stores, Incorporated, the tenant, by the sheriff under two distress warrants. The petition alleged that the United States had asserted a lien on the fund held by the sheriff for unpaid federal taxes assessed against Dixie.

The sheriff filed an answer admitting that he had in his possession the fund of $3,466, that he had no interest therein except for fees and costs, but that the fund was claimed by both the plaintiff trustees and the United States. He prayed that he be allowed to pay the fund into the registry of the court, and this was later done.

On leave of the lower court the United States filed a "Complaint in Intervention" in which it asserted that it had valid and prior liens amounting to $2,905.87, with interest and costs, on the fund in the hands of the sheriff for various federal taxes which had been assessed against and were unpaid by Dixie. It prayed that its claim be ordered paid prior to the payment of any other claims against the fund.

In their answer to the complaint in intervention the plaintiff trustees admitted that the United States had made federal tax assessments against Dixie, that the latter had refused to pay these assessments, and that the United States had filed notices of federal tax liens with respect to these assessments. For an affirmative defense the plaintiff trustees alleged that the United States had an adequate remedy for the collection of these taxes by making an assessment against and collecting them from the officer or officers of Dixie who were individually responsible therefor, pursuant to §§ 6671 and 6672 of the Internal Revenue Code of 1954; that the plaintiff trustees had no remedy for the collection of their claim for rent other than out of the distraint proceeds in the hands of the sheriff; and that the

United States should not be permitted to assert any priority to the fund in the hands of the sheriff until it had exhausted the remedies accorded to it by law against the responsible officer or officers of Dixie. Accordingly, the plaintiff trustees moved that the United States be barred from further prosecuting its claim against the fund held by the sheriff until first making a reasonable effort to collect such taxes by making an assessment against and attempting to effect a collection from the responsible officer or officers of Dixie.

In answer to a request for admissions, filed pursuant to § 8-111.1 of the Code of Virginia (Cum. Supp. 1966), the United States admitted that it had made no penalty assessment against the president of Dixie, or had otherwise attempted to hold him personally liable for these federal taxes claimed to be due by Dixie.

Following an oral argument based on the pleadings and without hearing any evidence, the lower court on March 12, 1965, over the objection of the United States, entered an order granting the motion of the plaintiff trustees to bar the United States from prosecuting and proving its claim for taxes in the present proceeding "until it demonstrates to the satisfaction of the court that it has made a reasonable effort to collect the taxes it claims by assessment and collection from a responsible officer of Dixie Dime Stores, Inc., pursuant to Sections 6671-6672 of the Internal Revenue Code of 1954." On April 27 the court entered an order denying the motion of the United States for the vacation of its order of March 12.

On August 12, 1966 the lower court entered an order reciting that the United States had declined to make an assessment against "the responsible officer" of Dixie for the collection of the federal taxes, as directed by its prior order, and ordering that the net proceeds of sale held by the sheriff and amounting to $3,353.68 be paid to the plaintiff trustees. From this order the United States has appealed.

In the meantime, on June 24, 1965, the United States had filed a notice of appeal from the order entered on April 27, 1965 refusing to vacate the prior order of March 12. However, this first notice of appeal was withdrawn in a written motion filed on August 23, 1965 on the stated ground that the order first sought to be appealed from "was interlocutory and not a final, appealable judgment."

There is a motion to dismiss the present appeal on the ground that it comes too late, because, it is said, the order of April 27, 1965 overruling the motion to vacate the order entered on March 12 was final and should have been appealed from.

We do not agree with this contention and overrule the motion to dismiss. The order of March 12, 1965, which the lower court declined to vacate in its order of April 27, was clearly interlocutory and not final. As has been said, it barred the United States from prosecuting and proving its claim "until it demonstrates to the satisfaction of the court" that it has made a reasonable effort to collect the taxes by assessment and collection from a responsible officer of Dixie. Not until the entry of the order of August 12, 1966, from which the present appeal has been taken, did it appear that the United States had declined to make an assessment for the unpaid taxes against a responsible officer of the delinquent corporation.

On the merits, the position of the United States is that it has an undisputed prior lien on the fund in the hands of the sheriff and that the enforcement of that lien may not be lawfully conditioned upon its efforts to collect such taxes from an alleged responsible officer of the delinquent corporation, as was required by the order appealed from.

Before us the trustees, successors to the landlord and owners of the claim for rent, do not contest the priority of the lien of the United States on the fund over their lien for rent.[1] The claim of the trustees is that while they have only one source for collecting their claim for rent—that is, by enforcing their lien on the fund in the hands of the sheriff—the United States has two sources of collection in that it may pursue its remedy against the responsible officers of the corporation for the collection of such taxes as well as by enforcing its lien against the fund in the hands of the sheriff. In this situation, they say: "Equity requires that, before ousting a competing creditor from the limited funds available, the United States should make a reasonable effort to collect the diverted taxes from the persons responsible, under Sections 6671-6672, Internal Revenue Code of 1954." The lower court adopted that view and entered the judgment complained of. For reasons to be stated, we reverse.

Federal tax liens form a part of the machinery for the collection of federal taxes. The establishment of a tax lien by Congress is an exercise of its power under Article I, § 8, of the Constitution "to lay and collect taxes," and hence, pursuant to Article VI of the Constitution, represents the supreme law of the land. *State of Michigan* v. *United States*, 317 U. S. 338, 340, 63 S. Ct. 302, 303, 87 L. ed. 312,

---

[1] *United States* v. *Lawler*, 201 Va. 686, 112 S. E. 2d 921 (1960); *United States* v. *New Rose Development Corp.*, 205 Va. 697, 139 S. E. 2d 64 (1964).

314 (1943). A state, without the consent of Congress, cannot impair the standing of such lien. *United States* v. *City of New Britain, Conn.*, 347 U. S. 81, 84, 74 S. Ct. 367, 370, 98 L. ed. 520, 525 (1954).

It is well settled that the remedies afforded the Federal Government for the enforcement of unpaid taxes are cumulative and not mutually exclusive. 35 Am. Jur. 2d, Federal Tax Enforcement § 25, pp. 42, 43; 47 C. J. S., Internal Revenue § 766, p. 999; *Blacklock* v. *United States*, 208 U. S. 75, 86, 28 S. Ct. 228, 232, 233, 52 L. ed. 396, 401 (1908). Upon this principle it was held in *United States* v. *Curry* (D.C.Md.), 201 F. 371, 373 (1912), that the United States was not compelled to resort to a sale of chattels and personal effects of a delinquent taxpayer before instituting proceedings to enforce the lien of such taxes on the taxpayer's real estate and leaseholds. Similarly, it was held in *Kovacs* v. *United States*, 355 F. 2d 349, 351 (9th Cir. 1966), that the proceeds of a taxpayer's life insurance policy were subject to tax liens to the extent of the cash value thereof and could be taken by the Government without a finding that the taxpayer's estate was insolvent or that the Government had exhausted its remedies against the estate or that it would be useless to proceed against the estate.

We applied the same principle in *Pollard & Bagby, Inc.* v. *City of Richmond*, 181 Va. 181, 24 S. E. 2d 564 (1943), where we held that in the absence of a statutory requirement to the contrary, the City of Richmond had the election of collecting its taxes against the testator's land by enforcing its lien on the land or by asserting its claim against the estate. 181 Va. at 186, 24 S. E. 2d at 567.

And, so, in the present case, the United States had the election to collect the taxes due by Dixie either by enforcing its lien on the fund in the hands of the sheriff or by proceeding against the responsible officers of the corporation who were made personally liable for such taxes.

Admittedly the United States had a prior lien on the fund in the hands of the sheriff, and yet the effect of the order entered by the lower court was to subordinate the Government's right of enforcement against the fund to the rent claim of the plaintiff trustees by imposing thereon a condition not warranted by the act of Congress. It was a plain violation of the principle stated in *State of Michigan* v. *United States, supra,* 317 U. S. at 340, 63 S. Ct. at 303, 87 L. ed. at 314, that a tax lien imposed by a law of Congress "cannot, without the consent of Congress, be displaced by later liens imposed by

authority of any state law *or judicial decision.*" (Emphasis added.) See also, *United States* v. *City of New Britain, Conn., supra,* 347 U. S. at 84, 74 S. Ct. at 370, 98 L. ed. at 525.

We are not here concerned with a situation involving the equitable doctrine of marshaling of assets which the trustees seek to invoke. We are concerned with the interpretation and application of federal statutes designed for the purpose of enforcing the collection of tax revenues and the right of a state court to interfere with the application of such statutes.

The order of distribution appealed from is reversed and the case is remanded with direction that an order be entered directing that the fund in the registry of the lower court, derived from the sale of the property of Dixie, be first applied to discharge the lien of the United States and that the balance, if any, be applied on account of the lien owned by the trustee plaintiffs.

*Reversed and remanded.*