361 So.2d 458 (1978)
CAPITAL SAVINGS ASSOCIATION
v.
A. J. RUNNELS, Jr.
No. 12058.
Court of Appeal of Louisiana, First Circuit.
July 10, 1978.
*459 W. Frank Gladney and W. Steven Mannear, Baton Rouge, of counsel for respondent-appellee R. Lowenbaum Manufacturing Co. et al.
Ralph W. Brewer, Baton Rouge, of counsel for respondent-appellee United Fashions, Inc.
John S. Campbell, Jr., Baton Rouge, of counsel for plaintiff-appellee Capital Savings Association.
M. Carr Ferguson, Gilbert E. Andrews, Crombie J. D. Garrett, Thomas M. Walsh, Washington, D. C., and George Hardy and Darrell D. White, Asst. U. S. Attys., Baton Rouge, of counsel for defendant-appellant United States.
A. J. Runnels, Jr., in pro per.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a concursus proceeding brought by the Sheriff of East Baton Rouge Parish to determine the priority of lien claims to the sum of $18,961.00, the balance of the proceeds of the sheriff's sale of property owned by the defendant, A. J. Runnels, Jr., after payment of the sums due plaintiff, Capital Savings Association, and the costs of the sale. The facts are undisputed. They were stated as follows by the trial court:
"The defendants' claims and the priority to be assigned thereto are based on the following sequence of events:
1. Recordation of a conventional mortgage on the subject property in favor of Capital Savings Association on February 21, 1967.
2. Recordation of a judgment for $2,165.33 in favor of United Fashions, Inc., against Runnels on February 10, 1971.
3. Recordation of a notice of a federal tax lien for $7,191.81 against Runnels later on February 10, 1971.
4. Recordation of a judgment for $1,139.84 in favor of R. Lowenbaum Manufacturing Co., against Runnels on May 7, 1971.
5. Recordation of a judgment for $178.72 in favor of Caron Jewelry and Gift Co., against Runnels on June 23, 1971.
6. Recordation of a notice of a federal tax lien for $2,182.00 on July 23, 1971.
7. Recordation of a judgment for $783.00 in favor of C.B.S. Dress and Sportswear Co., against Runnels on September 3, 1971.
8. Recordation of a notice of a federal tax lien for $4,573.44 on September 13, 1971.
9. Recordation of a notice of a federal tax lien for $2,982.27 on October 18, 1971.
10. Seizure of the property by the United States Government on July 18, 1975, pursuant to provisions of the Internal Revenue Code. 26 U.S.C. 6331.

*460 11. Sale of the property by the government, following advertisement, on September 9, 1975. At the sale, the minimum bid price of $7,304.50 was not received. The property was then declared to be purchased by the government pursuant to 26 U.S.C. 6335(e). A deed to the property was executed on February 4, 1976, and recorded with the Clerk of Court of East Baton Rouge Parish on February 6, 1976, pursuant to 26 U.S.C. 6338(c).
12. Seizure of the property by the East Baton Rouge Parish Sheriff's office on February 8, 1977, pursuant to a writ of seizure issued at the request of Capital Savings Association.
13. Sheriff's sale of the property to Donald V. Regner for $35,250.00.
Costs and attorney's fees incurred in connection with the Sheriff's sale, amounting to $1,279.85 have been paid. The claim of Capital Savings Association amounting to $13,132.25 has been satisfied. The balance of $18,961.00 remains to be distributed."
All parties agree that United Fashions, Inc., should be paid first out of the balance remaining. We must determine the rights of the remaining claimants: the United States of America, R. Lowenbaum Manufacturing Co., Jack M. Caron, d/b/a Caron Jewelry & Gift Co., and C.B.S. Dress & Sportswear Co. In the remainder of this opinion the United States of America will be referred to as the Government and the other claimants as the junior lienors.
The main issue for our determination is the effect of the purported "sale" to the Government on September 9, 1975. The Government urges that the sale along with the recordation of its deed to the property discharged the property from all encumbrances inferior to that of its first tax lien. 26 U.S.C. § 6339(c).[1] Therefore the Government as owner should receive the surplus after payment to United Fashions, since there would then remain no inferior encumbrances. C.C.P. Art. 2373.[2]
The junior lienors urge that the surplus should be paid to lienors inferior to United Fashions in the order in which their liens were placed on the property. They argue first that state law is applicable under which the "sale" to the Government would be considered a datien en paiement which would not extinguish their rights. See Quality Finance Co. of Donaldsonville, Inc. v. Bourque, 315 So.2d 656 (La.1975). They then argue that even under federal law the "sale" did not extinguish their rights. Finally, they urge that the deprival of their lien rights in this manner constitutes the denial of due process. We will discuss these assertions of the junior lienors in turn.
Federal law is clearly controlling as to the operation and enforcement of federal tax liens. See, e. g., United States v. Equitable Life Assurance Society, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); United States v. Speers, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965); Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); S. D'Antoni, Inc. v. Great Atlantic & Pacific Tea Co., 496 F.2d 1378 (5th Cir. 1974); Bank of Nevada v. United States, 251 F.2d 820 (9th Cir. 1957), cert. den. 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958). The definition of sale under Louisiana law is therefore irrelevant. The Government proceeded in accord with the federal statutory scheme in having itself declared owner of the property in question. It first levied on the property pursuant to 26 U.S.C. § 6331[3] in a summary *461 effort to collect its first lien of $7191.81 which the debtor had refused to pay after notice and demand. The property was advertised as required by statute. 26 U.S.C. § 6335(b).[4] In accordance with 26 U.S.C. § 6335(e)(1)[5] the Government set a minimum price of $7304.50 at which the property could be sold. When this price was not bid the property was declared to be purchased by the Government at the minimum price. 26 U.S.C. § 6335(e)(1). When neither Runnels nor the junior lienors redeemed the property within one hundred twenty days as provided by 26 U.S.C. § 6337(b),[6] a deed in favor of the Government was executed. 26 U.S.C. § 6338(c).[7]
*462 The Government asserts that this deed discharged the property from all junior encumbrances. 26 U.S.C. § 6339(c).
The Government appears to be correct. The clear wording of the statute is that "a deed to real property executed pursuant to section 6338 shall discharge such property from all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy was made had priority." The junior lienors, however, argue that the statute was never intended by Congress to cover this situation and that this lacuna in the law should be filled by resort to the equitable principle of "first in time, first in right."
The wording of the statute is clearly broad enough to cover the situation where the Government has adjudicated the property to itself. The statute was intended as a codification of prior jurisprudence. See H.Rep. No. 1884, 89th Cong., 2d Sess., p. 62 citing Blacklock v. United States, 208 U.S. 75, 28 S.Ct. 228, 52 L.Ed. 396 (1908) and Commercial Credit Corp. v. Schwartz, 130 F.Supp. 524 (E.D.Ark.1955); S.Rep. No. 1708, 89th Cong., 2d Sess., p. 20, U.S.Code Cong. & Admin.News 1966, p. 3722. Under these cases it is clear that if a third party had purchased the property from the Government after the distraint sale and adjudication he would have received the property free and clear from the claims of the inferior lienors. Blacklock, above. Likewise, if a third party had purchased at the distraint sale he would be protected. Commercial Credit Corp., above. We see no reason to give the Government less protection. It, in effect, paid $7304.50 for the property. Its first lien of $7191.81 was satisfied and it itself absorbed the cost of the sale and the distraint proceedings. 26 U.S.C. § 6335(e)(1).
Under Louisiana procedure the seizing creditor may always bid in the property. C.C.P. Art. 2339.[8] In such a situation if the amount of his accepted bid is the amount of his security plus costs, he will simply pay the amount of costs to the sheriff. The federal procedure is the same, except since the seizing creditor itself is acting as "sheriff" costs are not paid but are simply absorbed. Under Louisiana law if the seizing creditor bid the property in this manner he would obtain it free and clear of all junior encumbrances, just as did the federal government under its procedure. C.C.P. Arts. 2375-2377.[9] The property would likewise remain subject to superior encumbrances, as under federal law. C.C.P. Art. 2372.[10] Although such Louisiana procedure is certainly not controlling in this action, it shows that the federal procedure is not at all unusual.
We are forced to conclude that the district court fell into error when it, by analogy, applied the holding in Commercial Credit Corporation v. Schwartz, above, to the *463 facts in the instant case. In that case the court was concerned with the proceeds from a distraint sale of property, the title to which was never vested in the Government. There was no intervening statute adversely affecting inferior liens. We are in complete accord with its holding. See: Summer v. Allison, 127 Ga.App. 217, 193 S.E.2d 177 (1972).
In the case at bar, however, title to the property had been vested in the Government and there was an intervening statute adversely affecting inferior liens, namely, Sec. 6339(c).
The district judge conceded that had a third party purchased the property at the distraint sale they would have received the same free and clear of inferior liens. The judge a quo then reasoned that equitable considerations dictate against permitting the Government to take title to the property, hold the same, wait for a superior lienor to force its sale, and then claim the proceeds thereof to the prejudice of junior lienors.
By the same token we say that a junior lienor should not be permitted to refrain from purchasing the property at the distraint sale, decline to exercise its right of redemption, permit the Government to take title, wait for a superior lienor to force another sale, then claim lien rights to the proceeds under the principal of "first in time, first in right."
We do not ascribe to the seizure of the property by the Government the constitutional infirmity averred by the junior lienors. The summary tax collection procedures of the Government have been universally upheld in suits between the Government and the property owner or taxpayer. C.I.R. v. Shapiro, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).
For the above reasons, we reverse the judgment of the district court insofar as it decreed that the funds remaining on deposit after payment to United Fashions, Inc. be distributed to the remaining junior lienors according to the priority of recordation and decree that after the payment to United Fashions, Inc. and all costs of these proceedings any sums remaining be paid to the United States of America. This matter is herewith remanded to the district court for this purpose.
REVERSED AND REMANDED.
NOTES
[1] 26 U.S.C. 6339(c).

"A certificate of sale of personal property given or a deed to real property executed pursuant to section 6338 shall discharge such property from all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy was made had priority."
[2] C.C.P. Art. 2373.

"After deducting the costs, the sheriff shall first pay the amount due the seizing creditor, then the inferior mortgages, liens, and privileges on the property sold, and shall pay to the debtor whatever surplus may remain."
[3] 26 U.S.C. 6331.

"(a) Authority of Secretary or delegate.If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.
(b) Seizure and sale of property.The term `levy' as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).
(c) Successive seizures.Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary or his delegate may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.
(d) Cross references.
(1) For provisions relating to jeopardy, see subchapter A of chapter 70.
(2) For proceedings applicable to sale of seized property, see section 6335."
[4] 26 U.S.C. 6335(b).

"The Secretary or his delegate shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made, or if there be no newspaper published or generally circulated in such county, shall post such notice at the post office nearest the place where the seizure is made, and in not less than two other public places. Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof. Whenever levy is made without regard to the 10-day period provided in section 6331(a), public notice of sale of the property seized shall not be made within such 10-day period unless section 6336 (relating to sale of perishable goods) is applicable."
[5] 26 U.S.C. 6335(e).

"(1) Minimum price.Before the sale the Secretary or his delegate shall determine a minimum price for which the property shall be sold, and if no person offers for such property at the sale the amount of the minimum price, the property shall be declared to be purchased at such price for the United States; otherwise the property shall be declared to be sold to the highest bidder. In determining the minimum price, the Secretary or his delegate shall take into account the expense of making the levy and sale."
[6] 26 U.S.C. 6337(b).

"(1) Period.The owners of any real property sold as provided in section 6335, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 120 days after the sale thereof.
(2) Price.Such property or tract of property shall be permitted to be redeemed upon payment to the purchaser, or in case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary or his delegate, for the use of the purchaser, his heirs, or assigns, the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum."
[7] 26 U.S.C. 6338(c).

"If real property is declared purchased by the United States at a sale pursuant to section 6335, the Secretary or his delegate shall at the proper time execute a deed therefor, and without delay cause such deed to be duly recorded in the proper registry of deeds."
[8] C.C.P. Art. 2339.

"The judgment debtor and the seizing creditor may bid for the property."
[9] Art. 2375.

"The purchaser is liable for nothing beyond the purchase price. He shall pay the full purchase price to the sheriff, despite the existence of a mortgage, lien, or privilege on the property inferior to that of the seizing creditor."
Art. 2376.
"The sheriff shall give the purchaser a release from the mortgage, lien, or privilege of the seizing creditor, and from all inferior mortgages, liens, and privileges, and he shall direct the recorder of mortgages to cancel their inscriptions in so far as they affect the property sold."
Art. 2377.
"The sheriff shall pay the inferior mortgages, liens, and privileges, after payment of the costs and the amount due the seizing creditor. When the sum remaining after payment of the costs and the amount due the seizing creditor is insufficient to pay such inferior claims in full, the sheriff may deposit the remainder with the court and proceed by contradictory motion against the inferior creditors to have their claims referred to the proceeds of the sale."
[10] C.C.P. Art. 2372.

"The property is sold subject to any real charge or lease with which it is burdened, superior to any mortgage, lien, or privilege of the seizing creditor."