## COMMERCIAL CREDIT CORPORA-TION, Plaintiff,

v.

### Phil SCHWARTZ et al., Defendants.

### Civ. A. No. LR-2784.

United States District Court,
E. D. Arkansas, W. D.

March 24, 1955.

See also 126 F.Supp. 728.

Barber, Henry & Thurman, Ralph M. Sloan, Little Rock, Ark., for plaintiff.

Talley & Owen, William L. Blair, Little Rock, Ark., for defendant Schwartz.

Townsend & Townsend, Little Rock, Ark., for defendant Commercial Nat. Bank.

Julius C. Acchione, Asst. U. S. Atty., Little Rock, Ark., for the United States.

Roger L. Murrell, Little Rock, Ark., for defendant Kelly Motors, Inc.

Josh McHughes, Little Rock, Ark., for defendant Arkansas Democrat Co.

Luke Arnett, Little Rock, Ark., for Commissioner of Labor of State of Arkansas.

LEMLEY, District Judge.

This cause comes on for hearing upon the motion for summary judgment filed herein by the United States, which was made a party defendant under the provisions of 28 U.S.C.A. § 2410, the responses to said motions filed by the plaintiff, Commercial Credit Corporation, and Kelly Motors, Inc. and the Commissioner of Labor of the State of Arkansas, defendants herein, together with the cross motions for summary judgment filed by the plaintiff and by Kelly Motors,

---

1. The Commissioner of Labor has filed no formal cross-motion for summary judgment, but we do not think that this precludes us at this time from awarding him such relief as he may be entitled to under the facts as disclosed by the record before us. See 3 Barron & Holtzoff, "Federal Practice & Procedure," Section 1239, page 104; and 6 Moore's Federal Practice, 2d Ed., Section 56.12, pp. 2088 et seq. Since the Commissioner is a party to this suit in his representative capacity and represents the State, we shall hereinafter refer to him simply as "the State".

**526**

which motions have been submitted upon written briefs.[1] From our consideration of the record we are satisfied that there are no genuine issues as to any material facts, and that the case can be disposed of upon the pending motions.

The plaintiff commenced this action in the Chancery Court of Pulaski County, Arkansas (Little Rock) for the purpose of foreclosing a chattel mortgage and a real estate mortgage covering, respectively, certain personal property and certain realty of the defendant, Phil Schwartz; since the United States held tax liens covering both the real and personal property of Schwartz, it was made a party defendant; the Commercial National Bank of Little Rock, which held a first mortgage on the real estate of Schwartz, and the State, which claimed a lien on all of his property by virtue of certain unpaid unemployment compensation taxes, were likewise made parties, together with other lienors, and Kelly Motors, which had purchased certain of the personal property of Schwartz at a distraint sale conducted by the Government, was also named as a defendant. The Government removed the case here, as provided by 28 U.S.C.A. § 1444.

This litigation involves the conflicting claims of the plaintiff, the Government, and the State to a fund now on deposit in the registry of this court, representing the balance of the proceeds of the foreclosure sale of Schwartz' real estate remaining after satisfaction of the Bank's first mortgage and the payment of the costs of said sale. We are also called upon to determine the title which Kelly Motors obtained to the property which it purchased at the distraint sale which has been mentioned; and there is also involved a counterclaim for malicious prosecution which Kelly Motors has filed against the plaintiff. The facts in the case, insofar as here pertinent, are substantially as follows:

For some years prior to the filing of this suit the defendant, Schwartz, was engaged in the automobile business in Little Rock. In March of 1951 he and his wife executed and delivered to the Bank a first mortgage on the real estate here involved, which mortgage secured a debt of $8,000; said mortgage was properly recorded and is conceded to have been a first lien on said real estate.

In December of 1951 Schwartz owed the State $1,257.50, representing unpaid unemployment compensation taxes; on December 28, 1951 the Commissioner of Labor filed with the Circuit Clerk of Pulaski County, Arkansas, a certificate of assessment covering said indebtedness. Under the provisions of the pertinent Arkansas statutes, Ark.Stats.1947, §§ 81–1117(e), 26–1121, 26–1123, and 29–130, said certificate upon its filing acquired the status of a judgment of the Circuit Court of said County and was from the time of filing a lien on all of the real estate in Pulaski County belonging to Schwartz; since the State never sued out any execution, however, it never acquired a lien on Schwartz' personal property.

On March 27, 1953 the Government, acting under the authority of 26 U.S.C.A. §§ 3670–3672, filed with the Circuit Clerk a notice of lien for unpaid income taxes alleged to be due from Schwartz with respect to income received in 1948, the amount being $10,486.71; for convenience this lien will be referred to as "Government's Lien No. 1." On June 26, 1953 Schwartz executed a chattel mortgage in favor of the plaintiff covering certain personal property and securing a debt of $6,000, which mortgage was duly filed in the Circuit Clerk's office. On July 10, 1953 the Government filed two additional notices of lien, based upon assessments for certain unpaid withholding taxes aggregating $3,936.18; while two separate notices were filed, the parties have treated them as a unit, and we shall do likewise and shall refer to the two liens collectively as "Government's Lien No. 2". On the same day that Government's Lien No. 2 was filed Schwartz and his wife executed a second mortgage on his real estate to the plaintiff securing a debt of $4,000, but this mortgage was not filed for record until the next day. On September 21, 1953

the Government filed still another notice of lien based upon another assessment for unpaid withholding taxes amounting to $1,530.54, which lien we shall call "Government's Lien No. 3". Although certain other liens and claims thereafter came into existence, they obviously stand too low in the order of priority to ever participate in the fund now in court, and we do not stop to enumerate them.

From the foregoing it will be seen that as of September 21, 1953 the property of Schwartz was subject to the following liens in order of time: First, the Bank's first mortgage lien on Schwartz' real estate. Second, the State's lien for unpaid unemployment compensation taxes, which was a judgment lien on his real estate. Third, the Government's Lien No. 1, which was a statutory lien on all of Schwartz' property, both real and personal. Fourth, the plaintiff's chattel mortgage lien on the personal property covered thereby. Fifth, the Government's Lien No. 2, which was a statutory lien on all of Schwartz' property. Sixth, the plaintiff's second mortgage on the real estate. And, seventh, the Government's Lien No. 3 covering all of Schwartz' property. The situation just outlined can probably be more readily comprehended by reference to the following tabulation:

### Liens On Schwartz' Property In Order Of Time

#### A. Real Estate

1. The Bank's first mortgage.
2. The State's tax lien.
3. The Government's Lien No. 1.
4. The Government's Lien No. 2.
5. The plaintiff's second mortgage.
6. The Government's Lien No. 3.

#### B. Personal Property

1. The Government's Lien No. 1.
2. The plaintiff's chattel mortgage.

3. The Government's Lien No. 2.
4. The Government's Lien No. 3.

Prior to September 16, 1953 the Government issued four warrants of distraint, based respectively on the tax liabilities secured by its Liens No. 1, No. 2, and No. 3;[2] and on the date just mentioned officials of the Government, acting under said warrants, seized the personal property of Schwartz located at his place of business in Little Rock and covered by the plaintiff's chattel mortgage. Two days later Schwartz was notified that this property would be sold at auction, as provided by 26 U.S.C.A. § 3690; this notice referred to all four of the distraint warrants which have been mentioned. The gross amount of Schwartz' tax liability was $15,944.30, including penalty, lien fees, advertising costs, and interest computed up to September 29, 1953.

On October 5, 1953 the distraint sale was held, and Kelly Motors purchased the personal property for $7,400, which it duly paid. Prior to the sale bidders were advised of the conditions thereof including the proviso that the Government was selling "only the right, title, and interest of the taxpayer in the property offered for sale", and that it would not warrant or defend the title thereto.

When the Government received the purchase price of the personal property, it made an allocation thereof, the legality of which is sharply challenged here both by the plaintiff and by Kelly Motors. Instead of applying all of the proceeds to the tax liability secured by its Lien No. 1, senior tax lien, the Government applied said proceeds so as to extinguish completely its Lien No. 2 and Lien No. 3; the surplus still remaining was then applied so as to reduce Lien No. 1 by $2,349.77, leaving a balance of $8,136.94 still unpaid.[3] Thereafter the plaintiff commenced this action.

2. As already pointed out, "Lien No. 2" was actually two liens, and two warrants of distraint were issued based upon the tax liabilities secured thereby. At the time these warrants were issued no notice of Lien No. 3 had been filed, but said lien had come into existence, as between the parties when the assessment

list came into the hands of the Collector; the notice of Lien No. 3 was filed prior to the distraint sale presently to be mentioned.

3. The record reflects certain minor discrepancies in figures, which we do not undertake to adjust at this time.

Shortly after the case was removed to this Court, the real estate was sold by agreement, and the Bank's first lien was discharged in full. The balance remaining after discharging the Bank's claim and paying the expenses of the sale, which balance amounts to $7,758.87, is now being held in the registry of this Court pending final determination of the relative priorities of the respective claims. Since the money now on hand represents proceeds of the sale of real estate, it stands in the place of the land and will be treated as such; hence it is subject to the plaintiff's second real estate mortgage, but is not subject to the chattel mortgage.

The first controversy which we shall take up is that between the State and the Government. While the latter does not deny that the State's lien is superior in point of time to its tax liens, it contends nonetheless that it is entitled to priority; we cannot agree. Neither the State nor the Government ever undertook to seize the Schwartz real estate or subject it to sale; hence, at the commencement of this action both of said lienors held general statutory liens on the land, which liens have now attached to the moneys on deposit in the registry. Since 26 U.S.C.A. § 3670, upon which the Government's liens are based, gives no priority thereto, and since there are no allegations of insolvency on the part of Schwartz, which would bring into play the provisions of the federal priority statute, R.S. § 3466, 31 U.S.C.A. § 191, the relative standings of the liens now in question must be determined upon the principle that "the first in time is the first in right", and priority must be accorded to the State's lien to the extent of the unpaid balance of the 1951 assessment, which amounts to $317, plus interest. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 370, 98 L.Ed. 520.

In the case just mentioned certain property in New Britain, Connecticut was subject to certain mortgages, statutory liens for municipal taxes and water rents, and federal tax liens; it appears that some of the municipal liens were prior in time to some of the federal tax liens, and, conversely, that some of the federal liens were prior in time to some of the municipal liens. In foreclosure proceedings, wherein the property failed to sell for enough to discharge all liens, the Government and the City each contended that all of its liens were superior to all of those of its adversary. The State courts agreed with the City on the theory that under Connecticut law the City's liens were "specific" and "perfected," whereas the federal liens were merely "general". The Supreme Court of the United States reversed, it being held that it made no difference in cases involving real estate, and where the taxpayer was not insolvent, that one lien was "specific" and the other "general," that the liens of both the Government and the City were "perfected" in the sense that the identity of the lienors, the property subject to the liens, and the amounts thereof had been established, that 26 U.S.C.A. § 3670 did not give any priority to the federal liens, that the State could not impair the standing of the federal liens without the consent of Congress, and that under such circumstances the relative priorities of the liens must be determined upon the principle that " 'the first in time is the first in right' ", 347 U.S. at page 85, 74 S.Ct. at page 370. In this connection the Court said: "This principle is widely accepted and applied, in the absence of legislation to the contrary. * * * We think that Congress had this cardinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate." 347 U.S. at pages 85–86, 74 S.Ct. at page 370.

In the course of its opinion the Court distinguished United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, on the ground that there the lien set up in opposition to that of the Government was an inchoate attachment lien which did not ripen into judgment until after the federal lien

attached; and also distinguished United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071, on the ground that there the taxpayer was insolvent and R.S. § 3466 was applicable. In the instant case only real estate is involved, there is no question of insolvency, and both the State and federal liens are "choate" and "perfected" as those terms are used by the Supreme Court. Hence, the situation presented here is essentially the same as that presented in the New Britain case; and, of course, we shall follow that decision.

■ Turning now to the remaining questions of priority, the plaintiff contends that the Government had no right to apply the proceeds of the distraint sale in the manner in which they were in fact applied, but that since they were so applied, the Government is now precluded from changing the allocation and holds such proceeds as a trustee for its benefit. Alternatively, it contends that Kelly Motors bought subject to its chattel mortgage lien. The Government argues that it had the right to make the allocation which has been mentioned and denies that it is a trustee for the benefit of the plaintiff; it takes the position that the unpaid portion of its Lien No. 1 is superior to the plaintiff's real estate mortgage, and that the funds in court should be applied in satisfaction of the balance of Lien No. 1, which would practically, if not entirely, exhaust said fund. Moreover, the Government urges that in any event Kelly Motors bought subject to the plaintiff's chattel mortgage, and that the latter has not been prejudiced by the allocation of the proceeds of the distraint sale. It is the position of Kelly Motors that it bought free from the plaintiff's lien, and that the plaintiff's contentions to the contrary are frivolous and actuated by malice, and that their assertion amounts to a malicious prosecution.[4]

There is a dispute between the parties as to whether or not a representative of the plaintiff attended the distraint sale and warned prospective bidders that they would buy subject to the lien of its chattel mortgage, but we find it unnecessary to resolve that dispute since if the sale was in fact made subject to the mortgage, nothing would be added to the plaintiff's case by the fact that one of its representatives gave the alleged notice; on the other hand, if the sale had the effect of extinguishing the chattel mortgage lien, that effect could not be avoided by the protestations of its representative to the contrary.

There is clearly no merit in the plaintiff's argument that the Government occupies a position of trustee for its benefit. The Government had the right to make the sale and to utilize the proceeds thereof in the discharge of Schwartz' tax liability; if the sale was subject to the plaintiff's lien, the latter has not been prejudiced thereby or by the allocation made of the proceeds; if on the contrary such sale extinguished the mortgage lien, plaintiff is in no position to complain.

The contention that the Government, having made the aforesaid allocation of the proceeds of the sale, is now precluded from re-allocating of them, may be shortly answered by pointing out that the Government is not attempting to make any re-allocation. On the contrary, it is insisting that the allocation which it made was legal and proper. We are not here confronted with a situation involving an attempt by a creditor to change a legal application of a payment to a particular debt or part of a debt, where such change, if allowed, would work to the prejudice of a third party. We are satisfied that if the application made by the Government was unauthorized or illegal, this Court in deter-

4. Kelly Motors further contends that the plaintiff's chattel mortgage was a fraudulent conveyance, and it has filed a motion for leave to amend its pleadings so as to incorporate said contention therein, which motion is resisted by the plaintiff. The view which we take of the case renders it unnecessary for us to pass on said motion or to consider the validity of the plaintiff's mortgage.

mining the respective priorities of the claims to the fund in its hands has the power and the duty, in the application of the familiar maxim that equity regards as done that which should have been done, to disregard the improper allocation, and to determine the priorities of the conflicting liens as though a proper allocation had been made.

With those preliminary questions out of the way, we come down to a consideration of the two real issues in the case as between the plaintiff, the Government, and Kelly Motors, namely, the correctness of the Government's allocation of the proceeds of the sale, and the title which Kelly Motors acquired at said sale. Our decision on these issues will dispose of the case, except for the counterclaim of Kelly Motors to which we shall later refer.

In passing upon the correctness of the allocation of the proceeds of the sale it should first be said that although the Government has had the remedy of distraint and sale available to it since at least 1866,[5] it does not appear that prior to this time the courts have been called upon to determine how the proceeds of distraint sales should be allocated where the Government holds a plurality of tax liens one of which is superior and one or more of the others inferior to a mortgage lien of a third party; at least we have been cited to no such case, and we have found none.

It will be recalled, however, that in the New Britain case, supra, the Supreme Court held that 26 U.S.C.A. § 3670 confers no priority on federal tax liens, and that in cases not involving insolvency, such liens should take priority, as far as real estate is concerned, along with other liens in the order in which they attach and become choate; and, as heretofore pointed out, the Court considered that that principle was the "cardinal rule" which Congress had in mind in enacting Section 3670 without including a schedule of priorities therein. Furthermore the Court quoted with approval

the following language of Chief Justice Marshall in Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592:

> " 'The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant.' " 347 U.S. at page 85, 74 S.Ct. at page 370.

We would consider it strange indeed if the Congress intended for the Courts to be bound by the principle, "the first in time is the first in right," but intended for the collection officials of the Government to be left free to disregard that principle. We do not attribute any such intent to Congress, and hold that the principle just mentioned is as binding upon the collection officials as it is upon the courts.

■ The effect of giving recognition in the instant proceedings to the allocation made by the Government of the proceeds of the sale of the personal property would be to permit the Government to satisfy out of such proceeds two junior liens while preserving its senior lien for enforcement against the fund which stands in the place of the real estate and with respect to which the rights of the plaintiff are inferior. The injustice of such a result is manifest to our eyes. And it appears to us unthinkable that any court would have made the allocation which the Government has here made, had application been made to it originally for a determination as to how the proceeds of the distraint sale involved in this case should be applied. We do not think that the mere fact that the Government had the power, which it exercised, to invoke the summary remedy of distraint and sale gave to its employees the right to make the allocation in question. While those employees were, of course, bound to be

---

5.   See Historical Notes following Sections 3690 and 3700 of Title 26 U.S.C.A.

diligent in the protection of the Government's rights, they were also required to deal fairly with other lienors, to recognize their security rights, and to act in conformity with the principle of priority which has been mentioned. We are of the opinion, therefore, that the collection officials were required to apply all of the proceeds of the distraint sale, after deducting the lien fees and advertising costs, to the satisfaction of Government's Lien No. 1; and in determining priorities in the instant case we shall, as a court of equity, consider that such was done.

■ In support of its position the Government cites a number of cases recognizing and applying the well-established rule that in cases of voluntary payments where no direction as to application is given by the debtor, the creditor may apply the payment as he pleases, even though the result of the application is damaging to third persons. But that rule is applicable only to voluntary payments; it has no application to involuntary payments, such as the one involved in this case. 40 Am.Jur. "Payment", Sections 109 and 119.

■ Taking up now the question of whether or not the distraint sale extinguished the lien of the plaintiff's chattel mortgage, we conclude that it did, and that Kelly Motors owns the property which it bought, free and clear from all claims of the plaintiff. In Blacklock v. United States, 208 U.S. 75, 28 S.Ct. 228, 52 L.Ed. 396, it was held that where the Government, having a prior tax lien, sells the property under distraint, the sale cuts off a subsequent mortgage. Had the Government in the instant case simply issued one warrant, based on the 1948 tax liability of Schwartz, the lien of which was superior to that of plaintiff's mortgage, the situation in the Blacklock case would have been exactly duplicated; and we do not believe that a different result is called for merely because the Government sold under four warrants instead of one, particularly in view of our conclusion that the proceeds of the sale should have been applied entirely to the 1948 tax liability.

While our conclusion that Kelly Motors bought free from the plaintiff's lien is strengthened by our view that the proceeds of the sale should have been applied entirely to the 1948 tax obligation, it is not dependent thereon. We think that the sale in question extinguished plaintiff's chattel mortgage lien, regardless of the legality or propriety of the allocation eventually made of the proceeds of said sale. It should be kept in mind that Kelly Motors had no control whatever over the application of the money which it paid for the property; and we feel that it had the right to rely upon the fact that one of the distraint warrants under which the sale was held was issued with respect to a tax liability the lien of which was superior to plaintiff's mortgage lien. To hold otherwise would render doubtful and insecure titles obtained at distraint sales, which in turn would discourage bidding at such sales to the detriment of both the Government and the taxpayer.

In his argument on this phase of the case we think that counsel for the Government has misconceived the meaning of 26 U.S.C.A. § 3697(b), which provides in substance that a sale under a distraint warrant passes to the purchaser "all right, title, and interest" of the delinquent taxpayer in the property sold; that phrase is also contained in the standard instructions to bidders which were read to the bidders in the instant case. Counsel seems to think that said phrase refers to the right, title and interest of the taxpayer at the time of the sale; but Blacklock v. United States supra, makes it clear that the phrase refers to the right, title or interest of the delinquent at the time the Government's lien attaches, and that where that lien is superior, the sale extinguishes inferior liens.

■ Coming now to the ultimate question of the relative priorities of the claims to the fund with which we are concerned, we conclude that after the pay-

ment of any unpaid costs in this action, the balance of the fund should be applied in the following order: First to the satisfaction of the unpaid portion of the State's claim based upon its 1951 certificate of assessment. Second, to the satisfaction of that portion of Schwartz' 1948 income tax liability remaining after deducting from the total amount thereof a sum equal to the net proceeds of the distraint sale, which, as we view the matter, should have been applied in their entirety to said liability. Third, to the satisfaction of the Government's Lien No. 2, which is superior to the claim of the plaintiff, as far as the real estate is concerned. Finally, the balance, if any, should be paid over to the plaintiff in partial discharge of the lien of its second mortgage on the real estate. Plaintiff is also entitled to a deficiency judgment against Schwartz based upon said mortgage, and, likewise, to a judgment against him for any other indebtedness originally secured by the chattel mortgage, the lien of which we have held to have been extinguished by the distraint sale.

■■■ As to the counterclaim of Kelly Motors, we have serious doubt as to our jurisdiction to entertain it, and we feel that it should be remanded to the Chancery Court of Pulaski County for further proceedings. It is well settled that the limited jurisdiction of the federal courts must be clearly established, and that doubts as to the existence of federal jurisdiction must be resolved against it. While 28 U.S.C.A. §§ 2410 and 1444 clearly give us the power to consider all questions relating to the property here involved, we doubt that Congress in enacting those sections intended to confer jurisdiction on the federal courts to pass upon collateral disputes between the private litigants, with which the Government has no concern, in cases which could not have been removed to such courts except for the presence of the United States as a lien claimant. While it may be inferred from the pleadings that the plaintiff is not an Arkansas corporation, whereas Kelly Mo-

tors is, nevertheless nowhere in the record have we been able to find any averment as to the State of the plaintiff's incorporation, and the original complaint named as a defendant an individual who turned out to be a citizen of Louisiana. Although it is probable that plaintiff is not a Louisiana corporation, there is no presumption that it is not, and, of course, in order for this Court to have had original jurisdiction in this case, as between the private litigants, there would have had to have been complete diversity of citizenship between the plaintiff and all of the defendants. But conceding that such complete diversity did exist between the private litigants, and that this Court possessed original jurisdiction in the constitutional sense, the fact remains that plaintiff did not file the suit here but selected the State court as its forum and named as defendants Arkansas citizens and corporations, including Kelly Motors, which prevented the case from being removable by any of the private litigants, 28 U.S.C.A. § 1441(b). It was not until later that the Government was made a party, and the removal provisions of 28 U.S.C.A. § 1444 came into play. Moreover, when the counterclaim is viewed apart from the questions concerning the property involved in the case, it appears that although diversity exists between plaintiff and Kelly Motors, the amount of the counterclaim is less than $3,000. Hence, said counterclaim could not have been filed here originally as an independent suit.

A summary judgment in accordance with the foregoing is today being entered, which will have the effect of establishing the priorities of the several claims to the moneys in court and the right of the plaintiff to a deficiency judgment; it will also have the effect of quieting the title of Kelly Motors to the property which it purchased at the distraint sale, as against all claims of the plaintiff, and of remanding to the State Court the counterclaim of Kelly Motors against the plaintiff. We lack sufficient data, however, to undertake at this time to set forth the specific sums of money

which should be disbursed to the respective parties, or to state the amount of the deficiency judgment to which the plaintiff is entitled. Counsel, however, should have no difficulty in making the necessary computations, and when such has been done a motion for an order of disbursement, together with a motion for an order definitely fixing the amount of the plaintiff's deficiency judgment, can be presented. Should disagreement arise in connection with these matters the same can be disposed of by the Court after notice and hearing, if the latter should appear necessary.