William B. Geiler, J.
General Motors Acceptance Corporation (hereinafter referred to as G.M.A.C.) and David Silva, have each, 'by separate application, requested this court to determine their rights with reference to a motor vehicle which was sold by the ¡Sheriff of ¡Suffolk County at a public auction. Each application involves the same facts, questions of law and parties, and therefore the court on its own motion hereby consolidates both applications.
Mark Stotsky recovered a judgment against a Fred H. Cfraggette on October 7, 1968 in the Justice Court of the Town of Biverhead, Suffolk County. On October 14, 1968 a transcript of this judgment was filed in the Suffolk County Clerk’s office. Thereafter, on March 5,1969, an execution on the judgment was issued out of the County Clerk’s office directed to the Sheriff of Suffolk County. The Sheriff, pursuant to the execution, levied on a 1968 Chevrolet in possession of Stotsky and the said motor vehicle was sold at a public sale on May 26, 1969 to David Silva for the sum of $1,000 plus $50 for sales tax and $50 for poundage.
Shortly thereafter Silva received a letter from G.M.A.C. informing him that G.M.A.C. had a security interest, which was a matter of public record, in the subject motor vehicle.
The uncontroverted facts indicate that Craggette purchased the subject motor vehicle from an automobile dealer pursuant to a retail installment contract. The contract provided that the dealer, for the purpose of securing payment of the money due thereunder, would reserve title and retain a security interest in the motor vehicle. The contract also provided that the dealer, *453 in the event of any default, had the right to take immediate possession of the motor vehicle without demand.
The said retail installment contract was assigned to Gr.M.A.C, and on June 19, 1968, a financing statement was filed in the Suffolk County Clerk’s office.
Subsequently, Craggette defaulted in making the necessary payments pursuant to the terms of the contract and the balance past due as of April 25,1969 amounted to $2,491.06.
Gr.M.A.C. was unaware of the Sheriff’s sale before sending the above-mentioned letter. Silva, an infant 19 years of age, after receipt of the letter returned the motor vehicle to the Sheriff and requested his money back. The Sheriff has the motor vehicle, the money paid by Silva, and only asks that his poundage fee be paid. Gr.M.A.C. requests that the motor vehicle be turned over to it. Stotsky would like to have his judgment .satisfied out of the moneys received at the Sheriff’s sale.
The court is faced with the following questions:
1. Are the rights of a holder of a perfected security interest superior to those of a lien creditor?
2. Are the rights of a holder of a perfected security interest superior to those of a third-party purchaser?
3. May an infant disaffirm and rescind a purchase made at a Sheriff’s sale?
It is clear that Gr.M.A.C. is the holder of a perfected security interest which was filed prior to the levy tirade on behalf of Stotsky, a lien creditor. Subdivisions (2) and (3) of section 9-301 of the Uniform Commercial Code deal with the rights of a holder of a secured interest and those of a lien creditor.
¡Subdivision (2) of section 9-301 provides: “If the secured party files with respect to a purchase money security interest before or within ten days after the collateral comes into possession of the debtor, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.”
Subdivision (3) of section 9-301 provides: “ A ‘ lien creditor ’ means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.”
Thus, G.M.A.C., a holder of a perfected security interest, is given by the above-mentioned provisions of the Uniform Commercial Code a priority over Stotsky, a lien creditor.
The fact that the rights of G.M.A.C. are superior to those of Stotsky is also evident from an examination of the case of
*454 Matter of Iselin & Co. v. Burgess & Leigh (52 Misc 2d 821). The holder of a perfected security interest brought a proceeding pursuant to CPLR 5239 to vacate a levy made by the Sheriff, upon the ground that he had a prior security interest and was entitled to immediate possession of the subject chattel. The court held that the rights of a holder of a perfected security interest are' superior to those of a lien creditor, in the following language at page 82/3:
“ Petitioner’s security interest was perfected by proper filing * * * (Uniform Commercial Code, § 9-302), and thereupon petitioner’s security interest took priority over all unfiled and unperfected interests (Uniform Commercial Code, § 9-301), including the rights of judgment creditors who thereafter issued execution, since the liens of such creditors are perfected only by the issuance of execution, pursuant to CPLR 5202 (subd. [a]). On default, it would appear that petitioner became entitled to immediate possession of the collateral, both by virtue of the express provisions of the security agreement and of section 9-503 of the Uniform Commercial Code.
“ Thus, by both contract and statute, petitioner has established its right to take possession of the collateral, without judicial process ”.
Thus, the rights of a holder of a perfected secured interest are superior to those of a lien creditor.
Does G-.M.A.C. have the right to demand the return of the automobile from 'Silva, the third-party purchaser at the Sheriff’s sale ? In other words, are the rights of a holder of a perfected security interest superior to those of a third-party purchaser?
The purchaser at a Sheriff’s sale only receives that right, title and interest to a chattel which a Sheriff is able to convey. What right, title and interest does a Sheriff convey at such a sale? The court in the case of General Motors Acceptance Corp. v. Maloney, (46 Misc 2d 251) answered this queston in the f ollowing language at page 252:
“ A levy cannot relieve the conditional vendee of his obligation under the contract to pay the installments as they become due, nor can the levy void the conditional vendor’s statutory right to repossession * * * [See Uniform Commercial Code., § 9-503] when there is a default in payment. * * * Therefore, when the Sheriff seizes property in the possession of a conditional vendee, he takes it subject to the rights and obligations of the conditional vendee and cannot sell the right to possession if, prior to the sale, there is a default in payment.
*455 “ To hold otherwise would allow a Sheriff to acquire greater property rights against the conditional vendor than the conditional vendee had.”
Thus, the rights of a holder of a perfected secured interest are also superior to those of a third-party purchaser.
The court now comes to the third question before it. May an infant disaffirm and rescind a purchase made at a Sheriff’s sale?
What is an infant? An infant in law means any person who has not reached the age at which the law recognizes a general contractual capacity, which is 21 years of age (see 27 Am. Jur., Infants, § 2). There is no doubt that Silva falls under the definition of an infant.
It is quite clear that an infant, except in the case of necessaries and certain business contracts, may disaffirm a contract by him at any time prior to ratification (Goldfinger v. Doherty, 153 Misc. 826, affd. 244 App. Div. 779; also, see, Casey v. Kastel, 237 N. Y. 305; Washington St. Garage v. Maloy, 230 App. Div. 266; Scalone v. Talley Motors, 3 A D 2d 674).
The purpose of the rule permitting infants to avoid their contracts is to secure them from damaging themselves or their property by their own improvident acts (Marsak v. Title Guar. & Trust Co., 154 Misc. 295).
There is nothing so sacrosanct about a judicial sale that it cannot be set aside (see Dime Sav. Bank v. Thomas, 24 Misc 2d 850; House Mart v. Giacalone, 210 N. Y. S. 2d 376). In fact, there may even be more reason to set aside a judicial sale than a private sale, as indicated by the court in the case of Lane v. Chantilly Corp. (251 N. Y. 435, 438) in the following language: ‘ ‘ The rule that a buyer must protect himself against undisclosed defects does not apply in all strictness to a purchaser at a judicial sale. He may feel some sense of security against hidden pitfalls, and be lulled into signing a contract with an officer of the court which he would not make with an individual without further investigation.”
There is no reason why an infant should not be able to dis-affirm a judicial sale, especially where he may suffer financial loss because of his improvident act in bidding at a Sheriff’s sale without first making a title search in the County Clerk’s office.
The rule caveat emptor, with reference to a judicial sale, does not apply to an infant at a Sheriff’s sale and the Sheriff is directed to return the money paid by the infant Silva. The Sheriff is also directed to give G-.M.A.C. possession of the motor vehicle.
The expenses incurred by the Sheriff shall be paid by the lien creditor. These expenses would be the obligation of the judg *456 ment creditor if G-.M.AjC. demanded the motor vehicle before the sale or if no one had bid at the sale.
In summary, this court holds as follows:
1. Once a purchase-money security agreement is entered into and a financing statement evidencing that agreement is -filed in accordance with the requirements of the Uniform Commercial Code, then a secured party acting in good faith acquires rights which are superior to subsequent judgment creditors and third-party purchasers.
2. An infant may disaffirm and rescind a purchase made at a Sheriff’s sale.