**Theophil W. STREULE, Appellant,**

**v.**

**GULF FINANCE CORPORATION, Appellee.**

**No. 4767.**

District of Columbia Court of Appeals.

Argued Feb. 2, 1970.

Decided May 5, 1970.

---

Theophil W. Streule, pro se.

John B. Perna, for appellant.

Bernard T. Levin, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and FICKLING and NEBEKER, Associate Judges.

HOOD, Chief Judge.

On May 12, 1965, the United States assessed a lien against the property of Russell E. Travis, Jr., for unpaid income taxes, and on May 18, 1966 filed notice of lien in the United States District Court for the District of Columbia. In enforcement of this lien the United States seized and thereafter sold on June 20, 1966 in the District of Columbia an automobile as the property of Travis. The purchaser at the sale was Theophil W. Streule, appellant here. He received a certificate of sale purporting to convey to him "all right, title, and interest" of Travis in and to the automobile. On the basis of the certificate of sale Streule obtained a certificate of title from the District of Columbia Department of Motor Vehicles dated June 22, 1966, bearing the notation, "No Liens Shown by Record."

On or about September 10, 1966 the automobile was taken from Streule's garage by Gulf Finance Corporation. On December 4, 1965 Travis had obtained a loan from Gulf and as security therefor had executed a chattel mortgage on the automobile, and on December 15, 1965 had obtained a new certificate of title from the Division of Motor Vehicles of the State of Virginia

with Gulf's lien noted thereon in the amount of $1,080.00. As far as the record discloses, the automobile was still titled in Virginia at the time it was seized and sold.

Gulf took the automobile from Streule on the theory that it was entitled to possession because of a remaining unpaid balance of $899.00 under its lien. Contending that he had bought the automobile free and clear of all liens, Streule brought the present action in replevin against Gulf and the automobile was seized under the writ of replevin. Gulf answered by denying Streule's right to possession and counterclaimed for $899.00, the balance due under its lien. The trial court found in favor of Gulf and Streule has appealed.

The question in the trial court and here is whether Streule purchased the automobile free and clear of, or subject to, the unsatisfied portion of Gulf's lien. Underlying that question is the question of priority between the tax lien of the United States and Gulf's lien.[1]

■ While state law determines the nature of the taxpayer's interest in the property to which a federal lien can attach, federal law determines the priority among the competing liens asserted against such property.[2] When the Government assesses its lien for unpaid taxes it attaches to the taxpayer's property and has priority over all liens not choate and perfected as of the date of assessment,[3] except that pledgees, mortgagees, judgment creditors and purchasers whose liens become choate and perfected between the date of assessment and date of filing notice of the federal lien have priority over the federal lien.[4] A lien with priority over the federal lien is not extinguished by a tax sale but continues to be a lien on the property since what is sold is the taxpayer's right, title and interest in the property when the later federal lien attached upon filing.[5]

■ The Supreme Court has said that a lien is choate and perfected "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."[6] But the courts are divided over the question of whether it is also necessary for a lien to comply with state recording laws in order to become choate and perfected. We do not need to decide which position is the better view because in either case we affirm the judgment below.

■ Assuming that a lien can become choate and perfected without the need to record it under state law, Gulf's lien was choate and perfected when Travis and it entered into their agreement on December 4, 1965. At that time the identity of the lienor, the property subject to the lien and the amount of the lien were all known. Since Gulf was a mortgagee whose lien became choate and perfected after the date of assessment but before the date of filing notice of the federal lien, the federal lien attached to the vehicle only to the extent of Travis' equity in the vehicle above the amount owed to Gulf and it was only this

1. On November 2, 1966, certain amendments to the Internal Revenue Code relative to federal tax liens became effective. This case is decided under federal tax law as it existed prior to those amendments.

2. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

3. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); Stevan v. Union Trust Co., 115 U.S.App.D.C. 36, 316 F.2d 687 (1963).

4. 26 U.S.C. § 6323 (1964).

5. 26 U.S.C. § 6339(a) (2) (1958); Treas. Reg. 301.6335–1(c) (4) (iii) (1954). See Blacklock v. United States, 208 U.S. 75, 28 S.Ct. 228, 52 L.Ed. 396 (1908); Pargament v. Fitzgerald, 272 F.Supp. 553 (S.D.N.Y.1967), aff'd, 391 F.2d 934 (2nd Cir. 1968). Cf. Commercial Credit Corp. v. Schwartz, 130 F.Supp. 524 (E.D. Ark.1955).

6. United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

interest that Streule bought at the sale.[7] Appellant thus purchased the vehicle subject to appellee's lien.

Even if we deemed it necessary to look at state law to see if recording were required to make a lien choate and perfected, Gulf still would be entitled to the vehicle. In Virginia the certificate of title must show on its face all liens disclosed by the application for the certificate of title [8] and when the title is issued with the lien noted on it, the title is notice to the Commonwealth, creditors and purchasers that a lien exists against that vehicle.[9] Gulf's lien was noted on the certificate of title issued December 15, 1965, after the federal lien was assessed but before notice of this lien was filed. This gave Gulf's lien priority over the federal lien and for the reasons previously stated, Gulf's lien continued to be a lien against the vehicle when it was purchased by Streule.

 Streule does not challenge the validity of the Virginia certificate of title [10] but he contends that Gulf's lien lost its perfected status before the federal lien was filed. Since the vehicle was located in the District of Columbia for a period of time previous to the filing of the federal lien in the District of Columbia,[11] argues Streule, Gulf had, under D.C.Code 1961, § 28:9–103 (3) (1966 Supp.),[12] only four months to perfect its lien in the District of Columbia. This not being done, Gulf's lien ceased to be perfected after the four months' period

expired and before notice of the federal lien was filed. We do not agree.

Subsection (3) is inapposite. The controlling section is subsection (4) which provides:

Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of the District or any other jurisdiction which requires indication on a certificate of title of any security interest [lien] in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

This subsection has been severely criticized for its lack of clarity and the Official Comments to this subsection fail to shed any light on its intended meaning. We then look to the purpose of this subsection as stated by the Editorial Board of the Uniform Commercial Code:

Subsection (4) is new to avoid the possible necessity of duplicating perfection in the case of vehicles subject to a certificate of title law requiring compliance therewith to perfect security interests. The certificate of title law requirements are adopted as the test for perfection.

Unfortunately, the draftsmen of the Uniform Commercial Code did not delineate clearly the purposes of this subsection when it was adopted in final form. Since this court must interpret this subsection as it

---

7. *See* United States v. Lebanon Woolen Mills Corp., 241 F.Supp. 393 (D.N.H. 1964). *Cf.* General Motors Acceptance Corp. v. Stotsky, 60 Misc.2d 451, 303 N.Y.S.2d 463 (1969).

8. Va.Code Ann. 46.1–69 (1958).

9. Va.Code Ann. 46.1–71 (1958).

10. On his application for the Virginia certificate of title Travis gave his home address as being in the District of Columbia. When issued the Virginia certificate of title stated that Travis' address was in Newport News, Virginia. In the absence of evidence to the contrary we must assume the Virginia Division of Motor

Vehicles acted properly in issuing the certificate of title. *See* Stone v. Stone, 78 U.S.App.D.C. 5, 136 F.2d 761 (1943).

11. No evidence was introduced as to when the vehicle was removed from Virginia to the District of Columbia and as to the length of time the vehicle was actually located in the District of Columbia. For purposes of this opinion it does not matter how long the vehicle was located in the District of Columbia after the certificate of title was issued on December 15, 1965.

12. This section is part of the Uniform Commercial Code as enacted in the District of Columbia.

appears in our Code, we think that once a security interest [lien] is noted upon a certificate of title in a state which requires notation of a security interest [lien] on the certificate of title as a condition of perfection, the security interest [lien] remains perfected when the vehicle is removed to another state even if the debtor has not obtained a new certificate of title with the security interest [lien] noted on the certificate of title in the other state.[13]

Here the vehicle was covered by a certificate of title with Gulf's lien noted on it as required by Virginia law to perfect the lien and therefore Virginia law governs the perfection of the lien. Gulf having complied with the law of Virginia, the lien maintained its perfected status while the vehicle was located in the District of Columbia even though Travis did not obtain a District of Columbia certificate of title. Since Gulf's lien was properly perfected before notice of the federal lien was filed, the vehicle was sold subject to Gulf's lien and Streule could not, by his unilateral act in obtaining a District of Columbia certificate of title, cut off Gulf's lien.[14]

Although we affirm, the case must be remanded for the entry of a proper judgment. The judgment as entered was:

> Automobile * * * must be returned by plaintiff to defendant, upon failure to do so within 5 days, the defendant may have judgment against plaintiff in the amount of $899.00, plus costs and interest.

Our Code 1967, § 16–3740 provides that in an action of replevin, if the defendant prevails, "the judgment shall be that the goods, if delivered to the plaintiff, be re-

turned to the defendant, with damages for their detention, or, on failure, that the defendant recover from the plaintiff and his surety the damages sustained by him."[15]

 In case Streule fails to deliver the automobile, the amount of damages sustained by Gulf is not necessarily measured by the unpaid balance of its lien, because the value of the automobile may not equal that amount.[16] If Streule fails to return the automobile, Gulf's damages must be computed and judgment therefor entered against Streule and his surety.

The case is remanded for entry of judgment in accordance with D.C.Code 1967, § 16–3740.

Affirmed and remanded.

---

13. *See* General Motors Acceptance Corp. v. Whisnant, 387 F.2d 774 (5th Cir. 1968); In re White, 266 F.Supp. 863 (N.D.N.Y. 1967).

14. *See, e. g.,* Capital Automobile Co. v. Continental Credit Corp., 117 Ga.App. 451, 160 S.E.2d 836 (1968).

15. Although Gulf "counterclaimed" against Streule for $899.00, the unpaid balance due on the loan from Travis, it was mere-

ly asserting a lien in that amount on the automobile—not a claim against Streule personally.

16. The court made no finding as to the value of the automobile. Streule in his complaint alleged a value of $1,500.00, although he paid only $25.00 for it at the tax sale. When seized under the writ of replevin the automobile was appraised at $450.00.