**In re Lester B. GREENBERG and Elisa A. Greenberg, Debtors.**

**Bankruptcy No. 86–2386–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 19, 1989.

Russell M. Blain, Tampa, Fla., for debtors.

Dick Thornburgh, Atty. Gen. of U.S., Marika Lancaster, Trial Atty.—Tax Div., Dept. of Justice, Washington, D.C.

Michael A. Cauley, Asst. U.S. Atty., Tampa, Fla.

Michael Jorgensen, Asst. Dist. Counsel, I.R.S., Jacksonville, Fla.

Lynne L. England, Tampa, Fla., Asst. U.S. Trustee.

## ORDER ON OBJECTION TO CONFIRMATION

ALEXANDER L. PASKAY, Chief Judge.

On June 9, 1986, Lester B. Greenberg and his wife, Elisa A. Greenberg (Debtors) filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. At the time of the commencement of this action, the Debtor, Lester B. Greenberg, a dentist by profession, practiced as the principal of a professional service corporation (P.A.), a corporate entity recognized under the laws of this State, Fla. Stat. 621.01, et seq. He was also the sole principal of an entity known as Town & Country Dental Center (Town and Country) and Florida Dental Management, Inc. (Florida Dental). Both entities are debtors under Chapter 11,

but only the plan of reorganization filed by Florida Dental, confirmed and which sought to be modified, is relevant to the issue involved in this Chapter 11 case.

In due course, the Debtors filed their Disclosure Statement and Plan of Reorganization which was later on modified and amended again by an Amended Modification of the Plan of Reorganization. The United States of America (the Government) and Life Savings Bank filed Objections to the confirmation of the Modified Plan of Reorganization. At the duly noticed hearing to consider the objections to confirmation, this Court found that the Amended Modified Plan of Reorganization filed by the Debtors met the objections interposed by the Government and, therefore, overruled the objection to the confirmation, but deferred ruling on objections filed by Life Savings Bank and rescheduled the confirmation hearing. At the rescheduled hearing, the Court considered the Plan of Reorganization as ultimately modified by the Debtors together with a renewed objection by the Government to the confirmation of the modified Plan.

The thrust of the Government's objection is based on the proposition that the Plan improperly deals with the claim of the Government, the claim filed by the Internal Revenue Service (IRS). This claim is based on unpaid payroll taxes incurred by Florida Dental, the other Chapter 11 debtor. The claim does not represent the primary obligations of these Debtors, but only a secondary obligation imposed by the Internal Revenue Code, 26 U.S.C. § 6672, which imposes a 100% penalty on a responsible person for the failure to collect and remit the trust portion of the taxes owed to the Government.

At the conclusion of the hearing, the Court announced that the objection of Life Savings Bank was without merit and would be overruled. The Court also stated that while the Plan as ultimately modified otherwise met all requirements of § 1129 of the Code, it cannot be confirmed unless the designation of allocation of payments on a tax claim issue, raised by the Government, is determined in favor of the Debtors. The

Court took this matter under advisement and directed the parties to furnish legal memoranda on that issue.

It further appears from the record of the companion case involving Florida Dental, the primary obligor on the Government's tax claim involved, that while the Plan of Reorganization of Florida Dental has been confirmed, it is now sought to be modified to provide that all payments on the Government's claim based on unpaid payroll taxes shall be credited first to the trust fund portion of the claim, that is, the withholding taxes and employees' portion of the FICA taxes, and only when the trust fund portion is satisfied, the remaining payment should be credited to the balance of the claim. This proposed modification further provides that so long as these payments are being made by Florida Dental no other payment shall be made by these individual Debtors and only in the event the payments under the Plan of Florida Dental became delinquent would these individual Debtors be required to make the payments on the tax claim of the Government in this case. Thus, the ultimate question remaining for resolution is whether or not the bankruptcy court may confirm a plan of reorganization which permits the debtors to designate the allocation of the payments on tax claims of the Government, or is it solely within the power of the Government to apply the payments made under the plan of the primary obligor according to its own rules and regulations.

The Internal Revenue Code requires employers to withhold from their employees' paychecks money representing employees' personal income taxes, unemployment insurance and social security taxes that those employees owe or will owe the Government. 26 U.S.C. §§ 3102(a), 3402(a) (1982). Because federal law requires employers to hold these funds in "trust for the United States", 26 U.S.C. § 7501(a) (1982), these taxes are commonly referred to as "trust fund" taxes. *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251, 255–56 (1978). Should employers fail to pay them, the Government can collect an equivalent sum directly from the officers or employees of the em-

ployer who are responsible for their collection and payment. 26 U.S.C. § 6672 (1982). These individuals are commonly referred to as the "responsible" individuals. *Slodov, supra.*

It is the contention of the Government that it is entitled to apply the debtors' payments to the ordinary, non-trust fund tax debts first because payments pursuant to a Chapter 11 reorganization plan are involuntary payments; and under a long-standing IRS policy, backed by case-law authority, the IRS may designate the allocation of involuntary payments among a firm's various tax debts as the IRS sees fit. The IRS adds that to allocate Chapter 11 tax payments to "trust fund" tax debts will frustrate the congressional policy underlying § 6672 of the Internal Revenue Code, 26 U.S.C. § 6672 (1982), which holds "responsible" individuals personally liable for a corporation's "trust fund" tax debts.

The controversy surrounding the right of a debtor and in turn the power of the bankruptcy court to permit the designation of allocation of payments on a tax claim by a Chapter 11 debtor has been subject to extensive litigation. The controversy usually centered around the point of whether or not such payments were "voluntary" or "involuntary". The genesis of this approach is based on the longstanding policy of the IRS which permitted a taxpayer who "voluntarily" submits a payment to the IRS to designate the tax liability (i.e., "trust fund" or non-trust fund tax debts) to which the payment will apply. *See* Rev. Rul. 79–284, 1979–2 C.B. 83, *modifying* Rev.Rul. 73–305, 1973–2 C.B. 43, superseding Rev.Rul. 58–239, 1958–1 C.B. 94. However, where the taxpayer *"involuntarily"* makes the payment, the IRS has granted the taxpayer no such freedom to designate the allocation; the IRS decided how to apply the payment; and it almost always decided to apply the payment to a non-trust fund portion of the tax claim first. *See* IRS Policy Statement P–5–60, reprinted in 1 Administration, Internal Revenue Manual (CCH) 1305–15; *Slodov, supra,* n. 15; *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 801 (9th Cir.1987); *In re Ribs–R–Us, Inc.,* 828 F.2d 199, 201 (3rd Cir.1987).

The proposition urged by the Government has a plausible ring and is consistent with the common law policy which stands for the proposition that it is

> generally recognized between creditors and debtors, that the debtor may indicate which debt he intends to pay when he voluntarily submits a payment to his creditor, but may not dictate the application of funds that the creditor collects from him.

*O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964); *Hewitt v. United States,* 377 F.2d 921, 925 (5th Cir.1966); and *Amos v. Commissioner,* 47 T.C. 65 (1966). The view of the IRS is clearly not unreasonable and one even may accept the proposition urged by the Government that payments made on the tax claim of the Government pursuant to confirmed Chapter 11 plan may be "involuntary", but only for the purposes of its own rules. However, this conclusion means only that its own rules and regulations of the IRS do not compel it to accept this characterization and from that it concluded that the debtor taxpayer is never permitted to designate the allocation of the payments. The fact of the matter is there are instances when an agency such as the IRS itself has deviated from its own rules. *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co.,* 284 U.S. 370, 389–90, 52 S.Ct. 183, 186, 76 L.Ed. 348 (1932).

The courts have been divided and not uniform in the treatment of this issue. Several courts considered payment to a confirmed plan of reorganization to be "voluntary". *In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54 (Bkrtcy.M. D.Fla.1985); 823 F.2d 462 (11th Cir.1987); ―― U.S. ――, 108 S.Ct. 1724, 100 L.Ed.2d 189; 861 F.2d 1538 (11th Cir.1988); *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983); *O'Dell v. United States, supra; In re Hartley Plumbing Co.,* 32 B.R. 8 (Bankr.M.D.Ala.1983); *In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.Col. 1985); *In re Tom LeDuc Enterprises, Inc.,* 47 B.R. 900 (W.D.Mo.1984); *In re Hineline,* 57 B.R. 248 (Bankr.N.D.Ohio 1986); *In re Franklin Press, Inc.,* 52 B.R. 151

(Bankr.S.D.Fla.1985). Some others reached a contrary conclusion and held that the payments were "involuntary". *In re Ribs–R–Us, Inc., supra; In re Technical Knockout Graphics, Inc., supra; In re DuCharmes & Co.*, 852 F.2d 194 (6th Cir. 1988) (per curiam); *In re Amos v. Commissioner, supra; In re Avildsen*, 40 B.R. 253 (N.D.Ill.1984), *aff'd*, 794 F.2d 1248 (7th Cir. 1986); *In re Frost*, 47 B.R. 961 (D.Kan. 1985); *In re Mister Marvins, Inc.*, 48 B.R. 279 (E.D.Mich.1984); *In re Herald*, 66 B.R. 169 (Bankr.E.D.N.C.1986); *In re Tam Specialty Co.*, 57 B.R. 37 (Bankr.N.D.Cal. 1985); *In re Office Dynamics, Inc.*, 39 B.R. 760 (Bankr.N.D.Ga.1984); *In re Obie Elie Wrecking Co.*, 35 B.R. 114 (Bankr.N.D.Ohio 1983); *In re Hannan Trucking, Inc.*, 17 B.R. 475 (Bankr.N.D.Tex.1981); *In re Hubler Rentals, Inc.*, 79–2 U.S.Tax Cas. (CCH) ¶ 9621, 1979 WL 1465 (Bankr.E.D.Pa.1979); *In re Vincent–McCall Co.*, 68–2 U.S.Tax Cas. (CCH) ¶ 9591 (Bankr.E.D.Wis. 1968).

This question was recently revisited by the First Circuit Court of Appeals in the case of *In re Energy Resources Co, Inc.*, 871 F.2d 223 (1st Cir.1989) and the companion case of *In re Newport Offshore, Ltd.*, 871 F.2d 223 (1st Cir.1989). In these two cases, the First Circuit ruled that the difference between a "voluntary" and "involuntary" payment of a payroll tax obligation under the confirmed plan of reorganization is of no consequence and the ultimate question is whether or not the bankruptcy court has the legal authority to order the Government to apply tax payments made by a reorganized corporation to the trust fund portion of the Government's claim first and only permit collection from the responsible persons in the event the prime obligor, i.e., the employer who defaulted and failed to live up to the payment plan provided by the confirmed plan of reorganization. In arriving at this conclusion, the First Circuit primarily relied on the case of *A & B Heating & Air Conditioning, Inc., supra*, in which this Court initially held that the corporate debtor may provide in a plan of reorganization a designation to allocate the payments made on the tax claim under appropriate circumstances. This conclu-

sion was based on the finding by this Court adopted by the Eleventh Circuit on appeal that the efforts put forth by the non-debtor principals of the debtor corporation toward the reorganization process frequently appear to be the only hope to salvage the corporate life of the reorganized debtor and it is the only reasonable basis to expect that the future viability of the corporate debtor can be achieved.

The Supreme Court granted certiorari in *A & B Heating, supra.* and refused to dismiss the petition as moot, as urged by the debtor, in light of the fact that at the time the matter reached the Supreme Court, the plan of A & B Heating was already fully consummated and the claim of the Government was paid in full. *A & B Heating & Air Conditioning, Inc.*, 108 S.Ct. 1724. Nevertheless, on remand the Eleventh Circuit did reaffirm its original holding which affirmed this Court's decision. The fact that on remand to the Eleventh Circuit, *A & B Heating, supra*, in order to avoid any further litigation consented to the amendment of the confirmed plan by eliminating the designation provision of the plan, makes no difference and was totally meaningless in light of the fact that as noted earlier, the plan was fully consummated and all claims under the plan were properly paid, including the claim of the IRS.

Be that as it may, the First Circuit not only relied on *A & B Heating, supra*, but enunciated certain specific basic principles which, in this Court's judgment, are controlling. As noted before, the First Circuit paid no attention to the characterization by the IRS of the payments whether they were "involuntary" or "voluntary". The First Circuit stated that the ultimate question is whether or not the bankruptcy court has the legal authority to order the Government to apply the tax payments made by the reorganized corporation first to the trust fund portion of the claim, and after that portion is satisfied, to credit the balance of the payments to the non-trust portion of the tax claim. In concluding that the bankruptcy court has such power regardless of whether or not the payments

are characterized "voluntary" or "involuntary", the First Circuit set forth the following legal principles:

First, there is no question that Congress granted the bankruptcy courts broad equitable powers, including those powers "expressly or by necessary implication conferred by Congress." *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983), *cert. den.,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *see also Pepper v. Litton,* 308 U.S. 295, 304–05, 60 S.Ct. 238, 244, 84 L.Ed. 281, 288 (1939). Historically, bankruptcy courts have been called upon to use their powers to promote the "twofold" purpose of the Bankruptcy Code, often conflicting with other legislation. First, one is to ensure fair payment to creditors; the second, to provide the debtor with an opportunity to achieve a "fresh start". *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). This generally recognized equitable power is now codified by § 105 of the Bankruptcy Code which expressly grants the power to the bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."

Second, it has been traditionally recognized that the bankruptcy courts have the power to compel a creditor to apply payments made by the debtor to a particular creditor to whom the debtor has several obligations. *See National Bank of the Commonwealth,* 94 U.S. 437, 439, 24 L.Ed. 176 (1876); *see* also, 60 AmJur2d § 103 (1987). In addition, there is case law authority holding that courts may order the IRS to ignore its own "allocation" rules. See *Commercial Credit Corporation v. Schwartz,* 130 F.Supp. 524, 530–31 (E.D. Ark.1955) (federal district court exercised its equitable powers to set aside IRS allocation of involuntary payment because allocation was unfair to other creditors); *cf. Amos v. Commissioner, supra.*

Third, when the creditor is the Government, Congress specifically granted the bankruptcy court the power to restructure the tax debts, along with other debts, insisting only that a Chapter 11 plan must ensure that the debtor will pay all tax debt within six years from the date of assessment. § 1129(a)(9)(C) of the Bankruptcy Code.

In recognition of the fact that a basic underlying principle of the Bankruptcy Code is to balance the interest, albeit competing interest, between the creditors and the debtor, the Senate in its report noted:

> In a broad sense, the goals of rehabilitating debtors and giving equal treatment to private voluntary creditors must be balanced with the interests of governmental tax authorities who, if unpaid taxes exist, are also creditors in the proceeding
>
> . . . .
>
> A three-way tension thus exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

*S.Rep. No. 989, 95th Cong., 2d Sess. 13–14, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5799–5800.*

Fourth, contrary to the contention of the Government, the power of the bankruptcy court to authorize a designation of allocation of payments on a tax claim of the Government furthers the interest of all, including the interest of the Government. The Code mandates a finding by the bankruptcy court as a condition precedent to confirmation that the plan submitted by the debtor is feasible, that is, it will not be followed by liquidation on further reorganization, 11 U.S.C. § 1129(a)(11). Implicit in this finding, if made, is that the court is satisfied that the total claim of the Government will be paid in full within the statutory framework.

Fifth, the policy of the Government of allocating payments first to the non-trust

fund portion of the tax liability is not based on statute, but based on an internal rule prompted by the desire of the Government to preserve the liability of persons who are responsible for the trust fund portion under 26 U.S.C. 6672 and lacks the force of law. There is no statute that attaches so overriding an importance to this tax objective as to circumscribe a court's statutorily granted powers to the contrary. As a general matter, the IRS cannot, in any obvious way, circumscribe by using an internal rule a court's statutory powers. *See Dixon v. United States,* 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965).

It cannot be gainsaid that § 6672 of the Internal Revenue Code reflects a strong congressional policy to assure that a trust fund portion of unpaid payroll taxes are paid in full. This policy, of course, is justified if the trust fund portions are not paid. As a result, the Treasury suffers a loss because the employees from whose wages taxes were withheld will be still credited with those amounts as if they had in fact been paid to the Government. *United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548 (11th Cir.1986); *In re Avildsen, supra.*

A close analysis of the problem leaves no doubt, however, that the allocation policy of the IRS in Chapter 11 cases and its interpretation of 26 U.S.C. § 6672 does not really assure that the trust fund taxes are promptly turned over to the Government. On the contrary, a rigorous application of this policy may produce the anomalous result that the trust fund portion of the claim will be paid last and only after all non-trust fund taxes have been paid by the prime obligor. The policy of the IRS gives special status to the ordinary non-trust fund tax obligations of a Chapter 11 debtor and rather than protect, it places the payment of a trust fund obligation at risk.

To illustrate the point, assuming, for the purpose of discussion, that Florida Dental has an outstanding tax liability for which the Government filed a claim in Florida Dental and also filed a trust fund portion claim in the Chapter 11 case of these particular debtors. The Plan of Reorganization as amended of the prime obligor in this case, Florida Dental, provides for a payment in full of allowed tax claim of the Government by periodic payments during the six-year period permitted by § 1129(a)(9)(C). Under the proposition urged by the Government, all payments made by Florida Dental under its plan will be applied to the non-trust portion of the claim first, during which time no payment will be made on the claim of the Government filed in this Chapter 11 case until a non-trust fund portion is paid in full. It certainly makes sense to permit the designation to allocate these payments in an appropriate case in order to facilitate the individual debtors to re-establish themselves and obtain the fresh start in life, *Lines v. Frederick, supra,* which it sought when it filed a Petition for Relief under this Chapter.

In sum, this Court is satisfied that the decision of the First Circuit in *In re Energy Resources* and *In re Newport Offshore, Ltd.,* presents a sounder approach to the resolution of this problem and that the principles enunciated by the Eleventh Circuit in *A & B Heating* should represent the guiding principles and the mechanical characterization of the payments with labels of "voluntary" and "involuntary" is not relevant and controlling.

In order to arrive at a proper resolution, the Court must therefore first consider whether or not the designation of the allocation of the payments of the tax claim by the Debtor puts in jeopardy the tax claim of the Government and increases the risk that the Government will not be able to collect the total tax due; second, whether or not such risk is acceptable by an offsetting likelihood of the success of the rehabilitation and the allocation would increase the likelihood of the success of the reorganization and payment to the creditors in general which otherwise might lose their money.

In light of the fact that this record is devoid of any evidence which would enable this Court to determine to what extent the designation of the allocation of payments on the tax claim would place the tax claim

of the Government in jeopardy versus the ability of both the Debtors, not only this individual Debtor, but also Florida Dental, to successfully achieve reorganization. For this reason, this matter should be re-scheduled for final evidentiary hearing to establish whether or not under the facts of this case, it would be appropriate to permit the designation of allocation of payments on a tax claim.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that the objection of the Government to the designation of allocation on the payments of a tax claim provision of the Plan of Reorganization be, and the same is hereby, overruled without prejudice, provided, however, that the objection will be reconsidered in the event the Debtors are unable to establish at the final evidentiary hearing that both Plans of Reorganization meet the test set forth by the First Circuit in *In re Energy Resources Co., Inc.*, and *Newport Offshore, Ltd.*

DONE AND ORDERED.